475 A.2d 1235

**Ethel Censor RUBIN, et al.**

v.

**Bernard WEISSMAN, et al.**

**No. 1320, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

June 8, 1984.

Richard R. Jackson, Jr., Baltimore, with whom were Jonathan A. Chase and Ober, Kaler, Grimes & Shriver, Baltimore, on the brief, for appellants.

William J. Rubin, Baltimore, with whom were Roger J. Bennett and Horn, Dressel & Bennett, P.A., Baltimore, on the brief, for appellees.

Argued before BISHOP, GARRITY and BLOOM, JJ.

BISHOP, Judge.

This is an appeal by Ethel Censor Rubin and her husband, Alfred Rubin, from judgments entered after jury verdicts in the Circuit Court for Baltimore County. The original action filed by appellants was based on personal injury sustained by Mrs. Rubin as a result of an automobile accident that occurred on July 6, 1978, while she was a passenger in a taxicab.

In their amended declaration filed against Bernard Weissman, Valley Cab Association, Inc., Valley Cab, Inc., and Cornell Thomas, appellants charged in Count I—negligence;[1] Count II—breach of contract; Count III—negligence by common carrier; Count IV—loss of consortium. A fifth count on behalf of the four minor children of the parties asserted claims growing out of injuries sustained by Mrs. Rubin. The court disposed of this count at pretrial and it is not an issue before us.

The appellees are the owner and operator of the taxicab, Bernard Weissman, and Valley Cab, Inc., (VCI), both members of what was then the unincorporated Valley Cab Association. The jury returned a verdict in favor of Mrs. Rubin against Bernard Weissman and assessed damages in the amount of $2,500.00. On all other counts of the declaration, which we will explain later, the jury returned verdicts for the defendants. This appeal involves only court rulings

---

1. This count claims damages for physical pain, mental anguish and medical costs suffered by appellant Ethel Rubin.

and conduct with reference to Weissman and VCI, and not with reference to Cornell Thomas and Valley Cab Association, Inc.

## Facts

On July 6, 1978, Mrs. Rubin placed a telephone call to number 486–4000 to request a taxicab. In the yellow pages of the local telephone directory, this number is listed to Valley Cab, Inc., Pikesville Taxicab, Owings Mills Taxicab and Reisterstown Taxicab. Mrs. Rubin's request was radio dispatched and appellee Weissman responded. Weissman transported Mrs. Rubin from her home on Fallstaff Road located in northwest Baltimore City to Pennsylvania Station in downtown Baltimore. Weissman drove north on Charles Street, intending to drop Mrs. Rubin off in front of the west entrance to the station. Weissman went through the intersection of Pennsylvania Station and Charles Street on a red light. The cab was struck on the right rear side by a westbound car driven by Cornell Renaldo Thomas, one of the defendants below.

As a result of the accident, Mrs. Rubin received a bruise on her leg and a cut over her right eyebrow. She was taken by ambulance to the Emergency Room at the University of Maryland Hospital, treated and released.

Within one week after the accident Mrs. Rubin's family doctor examined her and referred her to a neurologist, who confirmed what the family doctor suspected, that Mrs. Rubin had multiple sclerosis. Mrs. Rubin immediately began a nationwide odyssey to find a physician who would cure her.

In Count I of the amended declaration Mrs. Rubin specifically alleged that the symptomology of the multiple sclerosis had "been greatly aggravated and triggered in its present patent, persistent, and pervasive state and degree by the collision...." It is this allegation which is at the heart of this appeal.

Prior to trial, defense counsel requested by interrogatory the names of all physicians who, and institutions which had examined or treated the plaintiff for the injuries sustained as a result of the occurrence and, with respect to each physician or institution, the diagnosis, prognosis, date of examination and nature of treatment. In response, appellant supplied information concerning 18 physicians or institutions. In answer to a question concerning experts to be called at trial, appellant listed only Dr. Maurice Sislen and Dr. Howard Silby.

On September 24, 1981, defendants filed a notice of their intentions to depose several of the physicians listed by appellants as having been consulted, but not listed as experts expected to testify at trial. On October 15, 1981, appellants filed a motion for protective order, asking that the court limit the scope of the depositions of Neal Aronson, M.D.; Frank Schuster, M.D.; Howard Weiss, M.D.; and Norman Oliver, M.D. "to the specific facts and diagnostic conclusions attendant to their treatment of the said plaintiff and specifically excluding any inquiry into or testimony concerning any matters or facts which either were not known to the respective physicians at the time of treatment or did not play a part in the course of treatment undertaken...." Specifically, appellants did not want defense counsel soliciting the physicians' expert opinions regarding the legal issues involved.

On November 19, 1981, Judge Paul Alpert issued an order allowing each defendant to depose the physicians as follows:

... [T]hat he further be permitted to interrogate said doctors with respect to their examinations, treatment rendered, diagnosis, prognosis and opinions concerning causal connection provided, however, that such interrogation will not be permitted regarding any opinions held by doctors which were developed in response to solicitation by counsel, unless the same were held by the doctors prior to any such solicitation.

Following the taking of the depositions, defendants moved to designate the physicians as expert witnesses for the defense. Appellants' motion to strike the designation was denied.

Trial commenced on March 7, 1983, in the Circuit Court for Baltimore County, before Judge Walter Haile and a jury. At the close of the plaintiffs' case, defense motion for a directed verdict was denied. At the close of all the evidence, defendants again moved for directed verdict as to all counts. The trial court granted the motion as to Count II, breach of contract, and Count III, negligence by common carrier. Count I, negligence, and Count IV, loss of consortium, were submitted to the jury.

Following deliberation, the jury found for appellant, Ethel Censor Rubin, under Count I against appellee Bernard Weissman and assessed damages in the amount of $2,500. As to all other defendants under Count I and all defendants under Count IV, the jury found no liability. This appeal is from judgments entered in accordance with those verdicts.

Appellants raise four issues:

I. Whether the lower court erred in permitting discovery of and use of expert testimony of two physicians who had treated appellant.

II. Whether the trial court erred in granting appellees' motions for directed verdict as to Counts II and III of appellants' amended declaration.

III. Whether the trial court erred in failing to instruct the jury regarding liability of members of an unincorporated association.

IV. Whether there is sufficient evidence in the record of misconduct and partiality on the part of the trial judge.

I.

*Discovery*

Appellant Mrs. Rubin's first contention is that the lower court, both Judge Alpert and Judge Haile, erred in

allowing discovery concerning the expert testimony of Drs. Howard D. Weiss and Neal T. Aronson. Both of these doctors had been consulted by appellant for treatment but were not designated to testify as experts at trial. Appellant bases this contention on 1) Maryland Rule 400 and 2) fundamental fairness. Although appellant relies on Rule 400 d, which relates to "documents and tangible things prepared in anticipation of litigation or for trial by or for another party," the more instructive section is Rule 400 c which provides as follows:

Unless otherwise ordered by the court parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,

(i) whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, and

(ii) including the existence, description, nature, custody, condition and location of any books, documents or other tangible things, and

(iii) including any information of the witness or party, however obtained, as to the identity and location of persons having knowledge of any discoverable matter, and

(iv) whether or not any of such matter is already known to or otherwise obtainable by the party seeking discovery, and

(v) whether or not the information will be inadmissible at the trial, if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The discovery rules are broad and comprehensive in scope, and were deliberately designed to be so. *Baltimore Transit Co. v. Mezzanotti*, 227 Md. 8, 13, 174 A.2d 768 (1961). The purpose of the discovery rules is to assure that no party goes to trial "in a confused or muddled state of mind" concerning the facts that gave rise to the litigation. *Klein v. Weiss*, 284 Md. 36, 55, 395 A.2d 126 (1978).

If all of the parties have knowledge of all of the relevant, pertinent and non-privileged facts, or the knowledge of the existence or whereabouts of such facts, the parties should be able properly to prepare their claims and defenses, thereby advancing the sound and expeditious administration of justice. In order to accomplish the above purposes, the discovery rules are to be liberally construed.

*Baltimore Transit Co., supra,* 227 Md. at 13, 174 A.2d 768. The trial judges, who are primarily called upon to administer the discovery rules, "are vested with reasonable, sound discretion in applying them, which discretion will not be disturbed in the absence of a showing of its abuse." *Kelch v. Mass Transit Administration,* 287 Md. 223, 229, 411 A.2d 449 (1980), *quoting Baltimore Transit Company v. Mezzanotti, supra.*

■ It is clear from the language in Maryland Rule 400 c and the above case law, that the information sought in the instant case was fully discoverable unless it fell into one of the pertinent exceptions: (1) privileged information or (2) attorney work product, material prepared in anticipation of litigation.[2]

■ *Privileged Information:* Communications made to a physician in his professional capacity by a patient are neither privileged under the common law of Maryland, nor have they been made so by statute. *Robinson v. State,* 249 Md. 200, 221, 238 A.2d 875 (1968); *O'Brien v. State,* 126 Md. 270, 284, 94 A. 1034 (1916); *Stevens v. Barnhart,* 45 Md.App. 289, 295–296, 412 A.2d 1292 (1980); *Franklin v. State,* 8 Md.App. 134, 141, 258 A.2d 767 (1969). Courts and Judicial Proceedings Article § 9–109 establishes a limited

---

**2.** This court has held that a psychiatrist's admission of fact, although neither a document nor tangible thing, still may fall within the ambit of the attorney work product exception. *Hall v. State,* 36 Md.App. 362, 368, 373 A.2d 1250 (1977). So, too, would the information sought in the instant case if prepared by the physicians in anticipation of litigation. *See* discussion *infra.*

privilege for patient-psychiatrist and patient-psychologist communications. As there is no common law patient-physician privilege, "[i]t exists by legislative grant...." *Bremer v. State*, 18 Md.App. 291, 334, 307 A.2d 503 (1973). C & J Article 9 contains no such privilege, therefore appellant cannot rely on this ground.

*Attorney Work Product:* Discovery in civil cases, as promulgated by now Maryland Rule 400, does not go to that which "is in essence the work product of the attorney accumulated in the preparation of the case." *Wagonheim v. Maryland State Board of Censors*, 255 Md. 297, 309, 258 A.2d 240 (1969). Whether a document or other tangible thing was prepared "in anticipation of litigation or for trial" is a question of fact which, if in dispute, is to be determined by the trial judge following an evidentiary hearing. *Kelch v. Mass Transit Administration, supra*, 287 Md. 223, 228, 411 A.2d 449 (1980). In the instant case, such an evidentiary hearing was held and at the conclusion, Judge Alpert determined that the physicians could be interrogated as to any opinions *not developed in response to solicitation by counsel.* Following the depositions, Judge Haile agreed to admit only such information. Judge Haile also made a specific factual finding that the physicians whose opinions are at issue were obtained "for purposes of treatment, to get the person well, not to testify at a prospective law suit." We cannot say that this finding was clearly erroneous, especially in view of Mrs. Rubin's frequent attempts to find a cure, and where both physicians stated in their depositions that they were consulted for treatment of Mrs. Rubin's multiple sclerosis and not in anticipation of trial. At Dr. Aronson's deposition, he was asked:

Q. By the way, did you understand at any point that you were examining or treating Mrs. Rubin at any point for her automobile accident?

A. No. I never really—you know, it never was couched to me in those terms.

Q. Well, in fact, in the initial visit it was never even mentioned to you?

A. Right.

Q. And is it fair to say then, that you did not examine and treat her for any injury for her automobile accident?

A. You know, she wasn't "an accident" case. You know, she didn't present herself as an accident patient. I cannot say why she may or may not have done this. You have to ask her to really clarify that.

Much the same information was elicited from Dr. Weiss.

Appellants have cited several unreported *nisi prius* opinions, collected in "Maryland Discovery Opinions." Aside from their limited precedential value, these cases are factually distinguishable. In each of the cases cited, it is clear that the experts were consulted in preparation for litigation or trial.

Appellants also suggest that "fundamental fairness" precludes the use of the information provided by these witnesses. Appellant's chief complaint is not concerning information as to diagnosis or prognosis, but rather the experts' opinion as to whether the accident exacerbated her condition. The Court of Appeals has recognized that where one party retains an expert witness, but does not call him at trial, the other party may not only call the same witness to testify in his behalf but, within the discretion of the trial judge, may disclose the initial employment by his adversary. *See City of Baltimore v. Zell,* 279 Md. 23, 367 A.2d 14 (1977). *See also Levitsky v. Prince George's County,* 50 Md.App. 484, 439 A.2d 600 (1982).

## II.

### *Directed Verdict*

Appellants contend that the trial court erred in "dismissing" Count II, breach of contract and Count III, negligence by common carrier. It should be noted initially, that Judge Haile did not dismiss these counts. He allowed appellants

to present evidence as to each of them and only after hearing all the evidence did he direct a verdict in favor of defendants.

The jury found in Mrs. Rubin's favor against Weissman on a negligence theory. Even if the jury could have found for appellant on another theory, such a judgment would have been duplicative. Whether appellant had a contract of safe carriage with Weissman appears to be moot, however, we will respond to and dispose of appellant's arguments on this issue.

■■■■ Appellants' first argument is that Mrs. Rubin had a contract of safe carriage with VCI and Weissman. As to VCI this argument relies primarily on a theory of vicarious liability based on the agency principles of *respondeat superior*. Under Maryland law a master is liable for the acts of his servant when such acts are performed with the employer's actual or implied authority. *Drug Fair of Md. Inc. v. Smith*, 263 Md. 341, 346, 283 A.2d 392 (1971). The rule of *respondeat superior* does not apply when the wrongdoer is an independent contractor. *Hoerr v. Hanline*, 219 Md. 413, 420, 149 A.2d 378 (1959). The rules which define the distinction between the relationship of employer-employee and that of independent contractors are fairly well settled. There were originally four elements to be considered:

(1) The selection and engagement of the servant;

(2) the payment of wages;

(3) the power of dismissal; and

(4) the power to control servants conduct.

*L.M.T. Steel Products v. Peirson*, 47 Md.App. 633, 635, 425 A.2d 242 (1981), *quoting B.P. Oil Corp. v. Mabe*, 279 Md. 632, 638, 370 A.2d 554 (1977). To this list was added, in *Keitz v. National Paving and Contracting Co.*, 214 Md. 479, 491, 136 A.2d 229 (1957), a fifth: "whether the work is a part of the regular business of the employer." But, "these are but *indicia* of the employment relationship—factors or criteria to consider. Only one of the five has any special conclusive significance; that is element four, the

power or right to control, with some immediacy and directness, the alleged servant's work. *Keitz, supra.* If that *right* of control is present, the relationship is necessarily one of employment, because it negates the independence or autonomy presumed to exist with an independent contractor." *L.M.T. Steel v. Pierson, supra.*

We consider now the instant case. Because we are judging the propriety of a motion for a directed verdict, we consider the evidence in the light most favorable to the party against whom the motion is made—in this case the appellants. *Impala Platinum Ltd. v. Impala Sales (U.S. A.), Inc.,* 283 Md. 296, 328, 389 A.2d 887 (1978). All conflicts must be resolved and all reasonable inferences must be drawn in their favor. *Id.* Nonetheless, the evidence presented at trial strongly supports the conclusion that Weissman was an independent contractor.

Weissman was a self-employed member of an association. The only service which the association offered him was the referral of calls through a dispatcher—and for that service Weissman paid a weekly fee. Weissman owned his own cab, paid his own salary and expenses, including car payments, insurance and repairs. He set his own hours and filed his own income tax, profit and loss statements. He was free to reject any passenger the dispatcher sent him, even though as a matter of practice he rarely did so. Several of the factors relied upon by appellant—no separate telephone listing, use of a VCI manifest—are required by the Public Service Commission. *See* Comar Section 20.90.-02.08.

Resolution of the issue of respondeat superior also resolves the question concerning the directed verdict as to Count III, negligence by common carrier. If VCI bears no liability for the alleged tort of an independent contractor, its status as a common carrier is irrelevant.

Whether appellant had a contract of safe carriage with Weissman is moot. The jury found in Mrs. Rubin's favor against Weissman on a negligence theory. Even if

the jury could have found for appellant on another theory, such a judgment would have been duplicative.

## III.

### Jury Instruction

■ Appellants claim error in the trial court's failure to instruct the jury on the liability of members of an unincorporated association. A litigant is entitled to have his theory of the case presented to the jury but only if that theory of the case is a correct exposition of the law and there is testimony in the case to support it. *Levine v. Rendler*, 272 Md. 1, 320 A.2d 258 (1974).

The instruction requested by the appellants was based on a principle of common law that members of an unincorporated association are severally liable as partners for the obligations of their fellow association members. *Littleton v. Wells and McComas Council*, 98 Md. 453, 456, 56 A. 798 (1904), 6 Am.Jur.2d Associations and Clubs, § 46. Appellants argue that this is especially true where the event or events giving rise to the alleged liability grows out of pursuing the business of furthering the goals of the association.

Md.Cts. & Jud.Code Annot., § 6–406 provides that an unincorporated association may be sued in its own name and that such an action "has the same force and effect with respect to the common property, rights, and liabilities of the group as if all members of the group were joined." Section 11–105 of the same article provides:

In any cause of action affecting the common property, rights, and liabilities of an unincorporated association, joint stock company, or other group which has a recognized group name, a money judgment against the group is enforceable only against the assets of the group *as an entity*, but *not against the assets of any member*. (Emphasis added).

■ The foregoing section is in accordance with the theory that while the unincorporated association may be

liable for the torts of one of its individual members, and the individual members may be liable for the torts of the association, the individual members are not liable for one another's torts. See 7 C.J.S. Associations § 31, 38.

Valley Cab, Inc., was a fellow member of the association with appellee, Weissman. Valley Cab Association, Inc., had not come into existence at the time of the accident and, in addition, appellant failed to bring suit against Valley Cab Association, the unincorporated association. Given these facts, the trial court did not err in refusing to instruct the jury that Valley Cab, Inc., was liable as a fellow member of the unincorporated association within which Weissman operated.

## IV.

### *Misconduct*

Appellants' final contention, that the trial court engaged in misconduct and partiality, is totally without merit. Appellants have taken a few sentences out of a voluminous transcript and ask us to consider them totally out of context. When viewed in context, these examples are far from sufficient to compel this Court to make a finding of judicial misconduct. It is also important to note that during the course of trial appellant neither objected to these alleged improprieties, nor moved for a mistrial. In addition, Judge Haile instructed the jury as follows:

"But you may not consider any conduct of mine as a Judge presiding in this trial in deciding what witnesses to believe or in trying to determine whether I favor one party or another, or that I believe or disbelieve the testimony of any witness because you not I, are the sole judges of the believability of a witness and the weight of the evidence of the witness. And you must not be influenced in any way by my conduct during the course of the trial."

Finally, it is difficult to see how appellant was prejudiced, since the jury reached a verdict in her favor.

**408**

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.