688 A.2d 491

Michelle HIMELSTEIN,

v.

ARROW CAB.

No. 668, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Feb. 3, 1997.

Andrea C. Babest and Samuel Sperling (Leonard J. Sperling and Sperling & Framm on the brief), Baltimore, for Appellant.

Steven J. Potter (Morton Edelstein on the brief), Baltimore, for Appellee.

Argued before MURPHY, C.J., MOYLAN, J., and JOHN J. GARRITY, Judge (retired), Specially Assigned.

GARRITY, Judge (retired), Specially Assigned.

This matter involves the payment of a default judgment through a garnishee, the Motor Vehicle Administration

(MVA), which held a security letter of credit posted on behalf of an unincorporated taxicab association for the purpose of participating in the Maryland Self–Insurance Program. We are asked to determine whether the security interest posted by the association is an asset held by the MVA that may be garnished to satisfy the liability of the unincorporated association—trading as Arrow Cab—as an entity, or whether the security is an asset of individual taxicab owners who are members of the association. We shall reverse the judgment of the Circuit Court for Baltimore City and hold that the security interest held by the MVA is an asset subject to garnishment in satisfaction of a judgment against Arrow Cab, the self-insured association, rather than of individual cab owners who are members of the association.

## FACTUAL BACKGROUND

While riding as a passenger in a taxi marked "Arrow Cab No. 23," appellant, Michelle Himelstein, was injured when the driver ran into a curb while making a turn. Arrow Cab participates in Maryland's Self–Insurance Program. This program allows an entity operating twenty-six or more vehicles to post a security bond or letter of credit instead of requiring the entity to purchase individual liability coverage for each vehicle. Taxicab companies with fewer than twenty-six vehicles may join other taxicab companies and form an association to reach the requisite number of cabs.

Although David Granat, as president of Arrow Cab, was duly served with process, Arrow Cab failed to file an answer contesting the complaint or to appear for trial held on April 18, 1994. A default judgment was entered against Arrow Cab for $19,878.09. In satisfaction of the judgment, appellant filed a Writ of Garnishment to Garnishee the MVA, which was issued by the Circuit Court for Baltimore City on July 19, 1994. In its Answer of Garnishee, the MVA admitted that it was in possession of Arrow Cab assets in the form of a $100,000 letter of credit. On August 25, 1994, intervenors (GNG Cars, International, Inc., New Pikesville Cab, Inc., and individual owners trading as Arrow Cab) filed a Motion to

Intervene in the garnishment proceedings. The thrust of intervenors' motion was that the letter of credit had been posted on behalf of the named intervenors only rather than on behalf of Arrow Cab. On December 13, 1995, trial commenced to determine whether the letter of credit/security posted by the garnishee was an asset of Arrow Cab that could be garnished to satisfy the default judgment.

Mr. Raymond Leard, manager of the self-insurance program of the MVA, testified on behalf of the appellant that the program, inaugurated in 1946, was designed to allow qualified entities such as C & P Telephone, Baltimore Gas and Electric, municipalities, and fleet owners of at least 26 vehicles to be self-insured. As the program progressed, an exception was made to allow individual owners or lessees of taxicabs to form an association comprising a pool of at least 26 vehicles. Such an association, operating under the aegis of a trade name, could be granted a Certificate of Self–Insurance (Arrow Cab certificate # 92) by the MVA upon submission of an appropriate bond assuring liability coverage. Thus, "Arrow Cab," in essence, acted as an "insurance company" covering all vehicles listed in its application.

In addition, Mr. Leard related that the MVA monitors the assets of all members of this type of an association to assure that "there are proper assets within the entities that have applied for self-insurance...." These additional assets, however, are not held or controlled by the MVA as security. The actual bond submitted by the Arrow Cab association was in the form of a $100,000 irrevocable letter of credit from Maryland National Bank. Mr. Leard further testified that the letters and application for the Certificate of Self–Insurance sent to the MVA had been submitted under the letterhead "Arrow Cab ... and signed by David H. Granat, President."

Upon review of the statute and regulations governing the group of companies that had banded together under the trade name Arrow Cab, the court stated that it could

find nothing that says that that entity, in effect, by participating in the Program, is agreeing, irrespective of the legal

liability of any of the members of the group or association for the claim being sought to be satisfied, in effect, to be responsible for any and all claims. . . .

[B]ut there is nothing before me to suggest that Arrow Cab, as such an entity, in fact, has assets being held by the garnishee to satisfy plaintiff's judgment. . . . There is no evidence that it is a person who holds assets. It is, in effect, a trade name, an association of individuals who may be persons, corporations, all matters of other legally recognized persons. . . .

In this case, it is the, in some sense, sad but true fact that of the possible parties who might have been proven to be liable in this case. And by those, I mean, as we have discussed at various points, either the operator of the vehicle, Mr. Stafford, who, as I noted, was dismissed from the case on a statute of limitations defense; the owner of the vehicle, G & G Cars International, Inc., which was dismissed from the case on the basis of statute of limitations; Jane T. Gensler, Inc., who has been represented as the permit holder, was likewise dismissed on a statute of limitations basis; and Taxi Leasing, Inc., was dismissed on a statute of limitations basis.

There is no judgment against any of those persons, entities, corporations in this case. All of them have been, in effect, knocked out of the case, if you will, for the various reasons indicated.

\* \* \*

If a particular owner of a vehicle was found to be not legally responsible with reference to a particular accident or incident, it would be appropriate to remove any claim directed toward the owner from the calculation of reserves.

\* \* \*

So the difficulty is that, in effect, though Arrow Cab may be an entity, which is an association, it, in my view, is not an

entity for which the MVA holds any assets, which are subject to garnishment to satisfy the plaintiff's judgment.

\* \* \*

Consequently, the writ of garnishment against the MVA should be and is hereby dismissed. . . .

In essence, the trial court granted Arrow Cab's motion for judgment and quashed the writ of garnishment by determining that the assets posted with the MVA were not assets of Arrow Cab, as a whole, but rather assets of an unincorporated group of individuals, persons, and corporations who had banded together under the trade name Arrow Cab. Thus, as those parties were deemed no longer subject to liability, having been dismissed due to the statute of limitations for the most part, the posted security interest could not be used to satisfy the judgment against Arrow Cab.

## CONTENTIONS

The thrust of appellant's contention is that the self-insurance bond of an unincorporated taxicab association is an asset that may be used to satisfy its debts. In this manner, the security bond that was posted as a prerequisite to obtain a Certificate of Self–Insurance by the members of the association trading as Arrow Cab is analogous to a bond that would be posted by an owner of a large fleet of vehicles to qualify for self-insurance status and to guarantee payment of judgment against the entity. On the other hand, the intervenor appellees argue that the Certificate of Self-insurance and the letter of credit were issued in the names of G & G Cars International, Inc., Individual owners t/a Arrow Cab, and New Pikesville, Inc. As these companies are the "record owners of the letter of credit posted to MVA for their self-insurance," no security interest was posted on behalf of "any association."

## STANDARD OF REVIEW

Maryland Rule 8–131(c) provides:

**Action Tried Without a Jury.**—When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Our standard of review hinges on whether the judge's ruling was a finding of fact or a conclusion of law. A finding of fact will not be disturbed on appeal unless clearly erroneous. *Dorf v. Skolnik*, 280 Md. 101, 117–18, 371 A.2d 1094 (1977). By contrast, the clearly erroneous portion of this section does not apply to a trial court's conclusions of law based on findings of fact, *Van Wyk, Inc. v. Fruitrade Int'l, Inc.*, 98 Md.App. 662, 669, 635 A.2d 14 (1994); in these instances, whether the trial court was legally correct is the proper standard of review. *Heat & Power v. Air Products*, 320 Md. 584, 591, 578 A.2d 1202 (1990).

Although appellees believe that our standard of review should be to determine whether the trial judge was "clearly erroneous" in her fact finding mission, this case clearly involves our determination of whether the trial judge correctly interpreted the appropriate statutes and regulations.

The trial judge ruled that the security held by the MVA could not be garnished to satisfy a judgment obtained against Arrow as she could not find, "within either the statute or the regulations, any support for the position" that a taxicab association is "responsible for any and all claims" for payment from assets held by the MVA.

■ Because the trial judge's interpretation of the statute is a question of law, our standard of appellate review is whether the lower court was "legally correct." *See Heat & Power*, 320 Md. at 591, 578 A.2d 1202.

## SELF–INSURED TAXICAB ASSOCIATIONS

■ Every vehicle registered in Maryland must have liability insurance "to promote the established legislative policy . . .

that seeks to assure that victims of automobile accidents have a guaranteed avenue of financial redress." *Rentals Unlimited, Inc. v. Aetna Casualty & Sur.*, 101 Md.App. 652, 660, 647 A.2d 1278, *cert. denied*, 337 Md. 90, 651 A.2d 854 (1994). Maryland motor vehicles may be insured either by obtaining a liability policy written by a licensed insurance carrier or by self-insurance if the entity qualifies under MVA regulations.

Self-insurance allows entities to insure their motor vehicle liability for the statutorily required minimum amounts, in lieu of paying an insurance company a premium. COMAR 20.90.02.19. Self-insureds post a bond or a letter of credit with the MVA as an assurance that they will fairly satisfy claims when appropriate. *See* Md.Code (1977, 1992 Repl.Vol.), § 17–103(a)(2) of the Transportation Article; COMAR 11.18.02.04. In this manner, self-insureds effect a large savings of insurance premiums, while the public's security is maintained. *See 1988 Gov.'s Blue Ribbon Report on Self–Insurance, MVA Outline of Self–Ins. Prog.*

In order to take part in the Maryland Self–Insurance Program, an entity must own or lease twenty-six or more vehicles. COMAR 11.18.02.03(3). If a taxicab company, however, owns fewer than twenty-six vehicles, it may qualify for self-insurance by forming an association with one or more other entities to reach the requisite number of vehicles. *See Id.* It is the association, in this case Arrow Cab—through its members, that qualifies for self-insurance; the bond or letter of credit posted or obtained on its behalf by its members is the property of the association and serves as security covering every vehicle listed in the application for the Certificate of Self–Insurance.

COMAR 11.18.02 was enacted, based in large part, on the recommendations made in the 1988 "Report of the Governor's Blue Ribbon Task Force." That Task Force was assembled to determine whether the self-insurance program should be continued, and, if the Task Force determined the program should continue, to make recommendations on how to administer the program. Corporations and industries, including the taxicab

industry, lobbied to keep the self-insurance program as it then existed. One of the Task Force's final recommendations was the following:

COMAR Section 11.18.02.01 currently permits '... any person, in whose name more than 25 vehicles are registered in this State, as owner or lessee ...' to qualify as a self-insurer (providing other requirements are also met). The Task Force believes this is an appropriate requirement.

This requirement is essential and should be construed to prevent individuals from entering into fictitious groups or imaginative contractual arrangements to avoid the necessity of obtaining third party coverage for automobile liability.

█ The minimum vehicle requirement clearly indicates that the drafters intended that any fleet participating in the program own sufficient assets to cover liability claims. Indeed, the regulations provide that an applicant must "own or lease twenty-six or more vehicles directly *or by an association* approved by the Administration." COMAR Section 11.18.02.03 A(3). In addition to those physical assets, the very purpose and essence of requiring a security bond is to secure the ability of the administrator of the program to satisfy "outstanding unpaid final judgments against the named self-insured, within the statutory limits."[1] COMAR Section 11.18.02.04 C(1).

█ Without question, Arrow Cab joined the self-insurance program and held itself out to the public and the MVA as an association of taxicab companies authorized to operate in Baltimore City. Moreover, Arrow operated taxicabs bearing a

---

1. We are aware of the general rule that, in the absence of statutes indicating a legislative intent to the contrary, a state agency may not be made a garnishee. *Mass Transit Admin. v. Household Fin. Corp.*, 292 Md. 313, 439 A.2d 1104 (1982). We believe the statutes indicate that the legislature intended that a bond or letter of credit posted by a self-insured entity be subject to garnishment. The whole purpose of posting a bond with the MVA is to cover the liability of the entity; if the bond could not be garnished, this purpose would be thwarted. For this reason, we conclude that the MVA may be a garnishee when it holds a bond for a self-insured entity.

distinctive green livery, and the words "Arrow Cab." This can be accomplished only by a group of taxicabs owned by the same entity or *belonging to the same association.* COMAR Section 20.90.02.16. The association of taxicabs under the banner of Arrow Cab asked for special treatment and was thus permitted to operate under the self-insurance program.

In *Rubin v. Weissman,* 59 Md.App. 392, 475 A.2d 1235 (1984), we dealt with the liability of members of an unincorporated taxicab association (Valley Cab Association). Judge Bishop observed on our behalf that

Md. Cts. & Jud.Code Annot., § 6–406 provides that an unincorporated association may be sued in its own name and that such an action 'has the same force and effect with respect to the common property, rights, and liabilities of the group as if all members of the group were joined.' Section 11–105 of the same article provides:

In any cause of action affecting the common property, rights, and liabilities of an unincorporated association, joint stock company, or other group which has a recognized group name, a money judgment against the group is enforceable only against the assets of the group *as an entity, but not against the assets of any member.* (Emphasis added.)

The foregoing section is in accordance with the theory that while the unincorporated association may be liable for the torts of one of its individual members, and the individual members may be liable for the torts of the association, the individual members are not liable for one another's torts. *See* C.J.S. Associations §§ 31, 38.

*Rubin,* 59 Md.App. at 406–407, 475 A.2d 1235.

In the matter at bar, Michelle Himelstein was injured while riding as a passenger in a taxi marked Arrow Cab No. 23, a vehicle covered under Certificate of Self–Insurance # 92 belonging to the association of taxicabs operating under the banner of Arrow Cab. We hold that when the default judgment was duly entered and enrolled against that unincorporated association, its security interest held by the Motor Vehicle

**540**

Administration was validly attached as an asset subject to garnishment.

JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.