705 A.2d 294

**ARROW CAB**

v.

**Michelle HIMELSTEIN.**

**No. 39, Sept. Term, 1997.**

Court of Appeals of Maryland.

Feb. 9, 1998.

Steven J. Potter (Morton Edelstein, on brief), Baltimore, for Petitioner.

Samuel Sperling, Andrea C. Babest (Leonard J. Sperling, Sperling & Framm, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW and RAKER, JJ., and JOHN F. McAULIFFE and ROBERT L. KARWACKI, Judges (retired), Specially Assigned.

ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

The question presented in this case is whether a claimant may satisfy a default judgment entered against an unincorporated association of taxicab permit holders by filing a writ of garnishment against the Motor Vehicle Administration ("MVA"), attaching a letter of credit that was posted with the MVA as security pursuant to the Maryland Self–Insurance Program. Pursuant to regulations promulgated by the MVA, taxicab owners are permitted to form associations to establish the requisite number of vehicles required in order to participate in the self-insurance program. COMAR 11.18.02.03. Participants in the self-insurance program are required to

post security with the MVA in order to secure their participation as a self-insured and to provide protection for the public. In this case the security posted with the MVA was in the form of an irrevocable letter of credit in the amount of $100,000 naming the MVA as the beneficiary. We are asked to decide whether Arrow Cab participated in the self-insurance program as an unincorporated taxicab association and whether the letter of credit is an asset of the association subject to garnishment by the judgment creditor.

The automobile accident giving rise to this controversy occurred on October 28, 1988. Michelle Himelstein, the Respondent, was a passenger in a taxi cab bearing the name Arrow Cab and painted in the familiar green and white colors of that taxicab association. The driver evidently misjudged the distance needed to complete a right turn and consequently hit the curb causing the taxi to ricochet off the curb and back into the street. As a result of this occurrence the Respondent suffered injuries.

On August 14, 1991, the Respondent filed suit in the Circuit Court for Baltimore City naming Arrow Cab as defendant and listing David Granat as the president of Arrow Cab and the party to be served. Apparently David Granat initially refused service stating that there was no such company. The summons was returned by the sheriff *non est* stating as the reason "Arrow Cab Company—No such company." Subsequent to the running of the statute of limitations the Respondent filed two amended complaints naming as defendants G & G Cars International, Inc. t/a Arrow Cab Company, Taxi Management, Inc., Jane T. Gensler, Inc., Taxi Leasing, Inc. and Guy Stafford. Primarily as a result of the running of the statute of limitations all of the defendants except Arrow Cab Company were dismissed from the action. A final amended complaint was filed naming as defendants Arrow Cab Company and David H. Granat, trading as Arrow Cab. Service of process was finally effected for Arrow Cab Company on November 28,1993, when a private process server served David Granat, president of Arrow Cab. On April 18, 1994, a trial was scheduled and David Granat, individually, was dismissed from

the action whereupon he left the courtroom. No answer was ever filed on behalf of Arrow Cab and no one appeared on behalf of Arrow Cab; consequently, a default judgment was entered in favor of the Respondent in the amount of $19,-878.09.

On July 19, 1994, a Writ of Garnishment was issued by the court to garnishee, the MVA, which filed an answer stating that defendant/judgment debtor, Arrow Cab Company, was a participant in Maryland's Self–Insurance Program and that it held assets of Arrow Cab in the form of an irrevocable letter of credit. The MVA further answered that upon order of the court it would instruct the bank to issue a draft to Ms. Himelstein in the amount specified in the Writ of Garnishment in order satisfy her judgment.

A Motion to Intervene was then filed by G & G Cars International, Inc., New Pikesville Cab, Inc. and individual owners trading as Arrow Cab ("Petitioners"), which was granted by the trial court. The Petitioners then filed a Motion to Quash Garnishment or in the alternative for summary judgment. The trial court denied Petitioners' motion and ordered that the matter proceed to trial on the sole evidentiary issue presented by the original writ of garnishment and the answers of the garnishee, plaintiff and intervening defendants specifically concerning whether the letter of credit/security posted on behalf of the garnishee is an asset of defendant, Arrow Cab, and can be garnished to satisfy plaintiff's judgment. The trial was held on December 13–14, 1995. The only witness who testified was Mr. Raymond Leard, Manager for the Self–Insurance Program for Automobile Liabilities for the State of Maryland, Motor Vehicle Administration, Department of Transportation, who testified on behalf of the Respondent. During the course of Mr. Leard's testimony, the unique corporate structure of the taxicab operation in this case was revealed. In effect, the Petitioners have created a corporate layer cake as to all of the parties associated with the operation of this taxicab.

The taxicab in which the Respondent was a passenger at the time of her injury was owned by G & G Cars International, Inc. which had leased it to Taxi Management, Inc. under lease number 46. The president of G & G Cars International, Inc., David Granat is also the president of Taxi Management, Inc. According to the terms of the lease G & G Cars International, Inc. was to be responsible for providing liability coverage on the vehicle.

In order for a vehicle to be operated as a taxicab in the State of Maryland it must have a permit that is issued by the Public Service Commission. According to the regulations "taxicabs under permits of this Commission shall have the full name of the owner of each taxicab for which a permit has been issued, permanently painted on one door on each side of the taxicab in letters at least 2 1/2 inches high." COMAR 20.90.02.16(A)(1). Thus it is the name of the permit holder that appears on the side of the cab and not the name of the vehicle owner, G & G Cars International, Inc.

Taxi Management, Inc. was then responsible for matching up the vehicles with the valid permit holders which are required to create a vehicle that can be operated as a taxicab. Then yet another company, Taxi Leasing, Inc. leased the taxicabs bearing the name Arrow Cab and the distinctive green and white color scheme to taxicab drivers. Apparently Taxi Leasing, Inc. is a corporation created for the sole purpose of matching up the vehicles leased by Taxi Management, Inc. with taxi drivers.

The trial court denied Respondent's Motion for Judgment against the garnishee, MVA, and granted Petitioners' Motion to Quash Garnishment, holding that the letter of credit is not an asset of Arrow Cab, although the court did acknowledge the existence of the unincorporated association. The court stated the following:

"So the difficulty is that, in effect, though Arrow Cab may be an entity, which is an association, it, in my view, is not an entity for which the MVA holds any assets, which are subject to garnishment to satisfy the plaintiff's judgment.

"I will agree with my own prior characterizations that certainly in the particular way that those persons, those individuals, those permit holders, those corporations provide taxi service, flying the colors of Arrow Cab, certainly may be confusing for a mere mortal to determine who or what may be responsible." (E.48).

The Respondent noted an appeal to the Court of Specials Appeals; that court reversed the ruling of the trial court and held that the irrevocable letter of credit held by the MVA is an asset of the unincorporated association, Arrow Cab, which is subject to garnishment. The case was remanded to the trial court for further proceedings. *Himelstein v. Arrow Cab*, 113 Md.App. 530, 688 A.2d 491 (1997). The Petitioners then sought a writ of certiorari. We issued the writ and shall affirm the holding of the Court of Special Appeals.

Although Petitioners have submitted eight questions for our review[1] we have consolidated and presented the questions as follows:

1. 1. Did the Court of Special Appeals err in finding that the security posted by the named self-insureds in Self–Insurance Certificate 92 under COMAR 11.18.02.04 was subject to garnishment arising from a judgment against an entity that was not a named self-insured?

2. Did the Court of Special Appeals err in finding that G & G Cars, Inc. obtained self-insured status pursuant to COMAR 11.18.02.03(A)(3) as an association when it owned or leased more than 26 vehicles?
3. Did the Court of Special Appeals err in finding that the Petitioners' posted security was an asset of an alleged association that operated as Arrow Cab subject to garnishment?
4. Did the Court of Special Appeals err in finding that an association can be liable to indemnify for personal injuries or property damage where COMAR 20.90.02.19(B) only requires the taxicab owner to assume such liability?
5. Did the Court of Special Appeals err in finding that whenever a registered distinctive color scheme or insignia of taxicabs is used pursuant to COMAR 20.90.02.16, the taxicab owners have an association formed to obtain self-insured status capable of being sued and holding the assets of the taxicab vehicle's owners?
6. Did the Court of Special Appeals err in finding that legislative intent exists to make the Department of Transportation Motor Vehicle Division a garnishee for all claims in the Self–Insurance Program?

I.   Was the Court of Special Appeals correct in holding that Petitioners are members of an unincorporated association of taxicabs, namely Arrow Cab, which allowed them to participate in and benefit from Maryland's Self–Insurance program that is administered by the MVA?

II.   Was the Court of Special Appeals correct in holding that the irrevocable letter of credit posted to the MVA by Petitioners in compliance with COMAR security requirements for self-insurers was an asset of the unincorporated association, Arrow Cab, which was subject to garnishment to satisfy judgments entered against the association?

We shall answer both questions in the affirmative.

As an initial matter it is important to remember why the General Assembly has enacted financial responsibility laws in the first instance.   We clearly held in *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 154, 416 A.2d 734, 736 (1980) that "[I]n Maryland, there is an established legislative policy designed to make certain that those who own and operate motor vehicles in this State are financially responsible. This legislative policy has the overall remedial purpose of protecting the public by assuring that the operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents."   We further explained that in order to "effectuate this legislative policy, the owner of a motor vehicle registered in Maryland is required to provide security, usually in the form of a vehicle liability insurance policy."   Maryland Code (1992 Repl.Vol.) § 17–103, § 17–104 of the Transportation Article.   *Id.* at 154, 416 A.2d 734.

---

7.   Did the Court of Special Appeals err in finding that the Petitioners, as named self-insureds, had a group name such that they were an unincorporated association capable of being sued?

8.   Did the Court of Special Appeals err in finding that even though G & G Cars, owner of the vehicle in which Ms. Himelstein was riding at the time of the alleged incident, was found not negligent, the assets of the alleged unincorporated association, Arrow Cab, were subject to garnishment?

In a recent case, the Court of Special Appeals, when considering the self-insurance program, reaffirmed that the legislative "purpose behind adopting motor vehicle regulations that require insurance on vehicles is to promote the established legislative policy in Maryland that seeks to assure that victims of automobile accidents have a guaranteed avenue of financial redress." *Rentals Unlimited, Inc. v. Aetna Cas. & Sur. Ins. Co.,* 101 Md.App. 652, 660, 647 A.2d 1278, 1282 (1994).

However, the statute also provides that "[t]he Administration [MVA] may accept another form of security in place of a vehicle liability insurance policy if it finds that the other form of security adequately provides the benefits required by subsection (b) of this section." Md.Code (1992 Repl.Vol.) § 17–103(a)(2) of the Transportation Article. The Administration is authorized by Md.Code (1992 Repl.Vol.) § 12–104(b)(1) of the Transportation Article to adopt rules and regulations to carry out those aspects of the Maryland Vehicle Law that it is charged with administering.

The regulations that govern the self-insurance program are codified in COMAR Title 11, Subtitle 18, Chapter 02 and are in relevant part as follows:

"Chapter 02   Self–Insurers

.01   Scope.

These regulations are designed to govern all self-insurers in the State, except the State government and the federal government.

.02   Definitions.

A.   In this chapter, the following terms have the meaning indicated.

B.   Terms Defined.

(1) "Administration" means the Motor Vehicle Administration.

\*       \*       \*

**(3) "Class B self-insurer" means:**

**(a) A Maryland Taxicab company; or**

\*       \*       \*

.03 Conditions for Certification as a Self Insurer.

A. An applicant for certification as a self-insurer shall:

(1) Provide the same benefits required by Transportation Article, Title 17, Annotated Code of Maryland, and by a political subdivision, regulatory agency, or commission which regulates the self-insurer;

(2) File an application for Maryland self-insurance annually accompanied by:

\* \* \*

(b) A security of a type and amount acceptable to the Administration;

(c) A listing of vehicles that includes for each vehicle the:

(i) Make,

(ii) Model,

(iii) Year,

(iv) Vehicle identification number,

(v) Tag number, and

(vi) Title number; and

\* \* \*

**(3) Own or lease 26 or more vehicles directly *or by an association* approved by the Administration:**

\* \* \*

(7) Comply with all applicable rules and regulations as set forth by the Public Service Commission or the local jurisdiction;

\* \* \*

E. The letters of credit required in § D(2) of this regulation shall:

(3) Be payable on demand to the Motor Vehicle Administration upon presentation of a final judgment against the named self-insured, within statutory limits, that remains unsatisfied, and...." (Emphasis added).

We now turn to the facts of the instant case in light of the legislative purpose behind the adoption of financial responsi-

bility laws as implemented by the regulations adopted by the MVA. Petitioners contend that the MVA issued the Certificate of Self–Insurance No. 0092 to Petitioner G & G Cars International, Inc., the owner of the vehicle involved in the accident. Petitioners further assert that Mr. Leard testified that G & G Cars International, Inc. owned 77 vehicles and obtained self-insured status on that basis. Both of these assertions are patently incorrect. The certificate of self-insurance lists the persons granted approval for self-insurance as Individual Owners T/A Arrow/New Pikesville Cab *and* G & G Cars International, Inc. In addition, in correspondence sent by Mr. Leard to the Director of Transportation, Maryland Public Service Commission, he names all three entities as having been granted self-insured status under the same certificate. Moreover, according to Mr. Leard's testimony G & G Cars International, Inc. alone would have been denied self-insured status as G & G Cars International, Inc. has a used car license in the State of Maryland and therefore as a "used car dealer could not be self-insured in this State at this time." (E.20).

Furthermore, as is clearly indicated in COMAR, a Class B self-insurer means a Maryland taxicab company. G & G Cars International, Inc. is not a Maryland taxicab company but rather is merely the owner of vehicles that are leased to other companies.

A listing of the taxicab vehicles that were to be covered by the self-insurance certificate was required as part of the self-insurance application submitted to the MVA. COMAR 11.18.02.03(2)(c). Multiple lists were submitted with the application with some produced on Arrow Cab letterhead while others were created on G & G Cars International, Inc. letterhead indicating that the cars were leased to other entities. It was these separate entities who leased the vehicles and then coupled them with their permits that created the taxicab that was to be covered under the self-insurance program. Therefore, it was these separate legal entities that banded together to form the unincorporated association, Arrow Cab, thereby aggregating the requisite number of taxicabs in order to qualify to participate in Maryland's Self–Insurance Program.

Furthermore, the association Arrow Cab held itself out as one company to the public and was therefore well known by the public as Arrow Cab. They achieved this name recognition primarily by maintaining a fleet of taxicabs with green and white livery and with an Arrow Cab insignia painted on each vehicle as permitted by COMAR 20.90.02.16.

"a. Every company, partnership, association, or individual operating five or more taxicabs under permits of this Commission may adopt and employ a distinctive color scheme or insignia which shall be registered with the Commission. An owner of a taxicab may not paint his vehicle or vehicles to so closely resemble the distinctive color scheme or insignia of other taxicabs as to mislead the public as to the identity of the owner."

In this case the use of the distinctive color scheme was by the unincorporated association Arrow Cab as the parties do not fit the definition of a particular company, partnership or individual as the vehicles are owned and operated by different individuals, all of whom operated under the banner of Arrow Cab. Petitioners suggest that the individual permit holders do not realize an increased or decreased financial benefit as a result of the participation of any other permit holder. Although they admit that there is a public policy interest in having a large group of permit holders use a common trade name for the public to recognize and contact for taxicab services, Petitioners would like to have their corporate layer cake and eat it too.

As a practical matter this public recognition is to the benefit of the taxicab association, Arrow Cab, as the result will be that it will experience increased business as a result of the public's awareness. Therefore it is clear that the permit holders certainly do realize a financial benefit from the participation of other permit holders in the unincorporated association because as the number of taxicabs that operate under the same banner of Arrow Cab increases the public familiarity with the taxicab service also increases. If one permit holder operates under a single name and another permit holder operates under a different name then obviously these individual taxicabs will be

at a significant disadvantage in the marketplace as the likelihood of being called for service will be considerably less. A consumer needing the services of a taxi will most likely call that company whose name is most familiar to them and not the name of a single operator. It reasonably follows that a consumer will feel more secure utilizing the services of a well known taxicab company. This security would likely include the belief that the service provided is efficient, that the vehicles are well maintained, and that the company is financially responsible.

■ Given that Arrow Cab availed itself of the self-insurance program as an unincorporated association which allowed its participation in the program, it would be illogical to then hold that the bond/letter of credit posted for the self-insured was not an asset of this unincorporated association subject to garnishment. Under the facts of this case, the existence of the association is what gives rise to the need for the posting of the bond. Without the association of Arrow Cab there would not have been any participation in the self-insurance program and thus no bond or security would have been necessary. To suggest, as the Petitioners do, that even if this association is deemed to exist that the letter of credit is not an asset of this association is absurd. Without the association there would have been no need for the posting of security and thus no letter of credit would have ever been issued.

As an unincorporated association Arrow Cab is subject to suit as provided by statute in Md.Code (1995 Repl.Vol.) § 6–406 of the Courts and Judicial Proceedings Title as follows:

> "(a) An unincorporated association, joint stock company, or other group which has a recognized group name may sue or be sued in the group name on any cause of action affecting the common property, rights, and liabilities of the group."

■ Finally, the Petitioners claim that garnishment proceedings against the MVA are improper as a violation of the sovereign immunity of the State of Maryland. As we held in *ARA Health Services, Inc. v. Department of Public Safety and Correctional Services,* "The applicability of sovereign

immunity in a particular case, therefore, turns on: (1) whether the entity asserting immunity qualifies for its protection; and, if so, (2) whether the legislature has waived immunity, either directly or by necessary implication, in a manner that would render the defense of immunity unavailable." 344 Md. 85, 92, 685 A.2d 435, 438 (1996) *citing Board v. John K. Ruff, Inc.*, 278 Md. 580, 586, 366 A.2d 360, 363 (1976). The flaw in Petitioners' argument is that they are not entitled to the defense of sovereign immunity and they do not qualify for its protection. The MVA, as authorized by the General Assembly, has provided that financial responsibility of a taxicab association that wishes to qualify as self-insurers is to be assured by the association posting a letter of credit which is subject to garnishment. Thus, there was an express waiver of immunity in this instance by MVA. Moreover, the taxicab association is not a governmental entity and not entitled to immunity.

### *JUDGMENT AFFIRMED, WITH COSTS.*

JOHN F. McAULIFFE, J. (retired), Specially Assigned, concurs in the result.

JOHN F. McAULIFFE, Judge (retired), Specially Assigned, concurring.

I concur in the result. The Plaintiff's amended complaint named as Defendants "Arrow Cab Company" and "David H. Granat, trading as Arrow Cab." David H. Granat was served as "president." Granat appeared on the scheduled trial date and was successful in having the second count of the complaint, which sued him in an individual capacity, dismissed. Granat then left the courtroom, and trial proceeded on the first count against Arrow Cab Company. No answer had ever been filed on behalf of Arrow Cab Company, and no attorney appeared to defend that company. Judgment was entered in favor of the Plaintiff against Arrow Cab Company in the amount of $19,878.09. No appeal was taken from that judgment.

The instant controversy arose when the Plaintiff attempted to collect her judgment through the letter of credit posted with the Motor Vehicle Administration as security for self-insurance of an aggregation of motor vehicles operating as taxicabs. The owners of the motor vehicles self-insured in this group intervened in the garnishment proceeding, arguing that funds promised by the letter of credit should not be available to satisfy the judgment. I agree that the intervenors are not correct in this assertion and that the Plaintiff may have satisfaction of her judgment from this source. I reach this conclusion, however, on the basis that the Plaintiff has obtained a final judgment for damages arising out of the operation of a taxicab that is a part of the group of taxicabs insured by a self-insurance arrangement approved by the Motor Vehicle Administration and secured by the letter of credit. A final judgment obtained against the driver of this taxicab would be required to be paid under this self-insurance plan, and so too must a judgment against any other party shown to be responsible for the driver's negligent operation.

The Plaintiff sued Arrow Cab Company, claiming that it was an association that owned and operated the taxicab which was involved in this accident, and that the association was vicariously liable for the negligence of the driver. I am not at all certain that Arrow Cab Company was an unincorporated association[1], and if it was, that it would be liable for the negligence of any driver operating under the colors of Arrow Cab. These issues, however, were resolved by the judgment against Arrow Cab Company—a proceeding in which Granat elected not to participate on behalf of the alleged unincorporated association.

Maryland Rule 2–124(h) provides as follows:

---

1. I do not agree that the approval of self-insurance for this aggregation of motor vehicles and owners constitutes approval of an unincorporated association known as Arrow Cab Company. The group approved by the Motor Vehicle Administration for a self-insurance package was made up of vehicles owned by various persons or entities, some of which operated under Arrow Cab colors and some of which operated under New Pikesville Cab colors.

*Unincorporated association.* Service is made upon an unincorporated association sued in its group name pursuant to Code, Courts Article, § 6–406 by serving any officer or member of its governing board. If there are no officers or if the association has no governing board, service may be made upon any member of the association.

If Arrow Cab Company was an unincorporated association, Granat was certainly a member or officer, and service of process upon him would be sufficient. Granat could have challenged the allegation that Arrow Cab Company was an unincorporated association and the allegation that if it existed as an association it was vicariously liable for the negligence of the driver. Granat chose not to do so, and the final judgment entered in that action resolved those issues. The judgment was for injuries suffered because of the negligent operation of a taxicab that was specifically listed as a covered vehicle under this method of self-insurance, and the security posted to support the self-insurance was therefore properly attached for payment of the judgment. It is on this basis that I vote to affirm.