835 A.2d 253

**Augustus C. HARRIS**

v.

**Clifford R. BRIDGFORD.**

**No. 1391, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Nov. 5, 2003.

Jason Buckel (S. Ramani Pillai, Levasseur & Buckel on the brief), Cumberland, for appellant.

Shirlie Norris Lake (Eric M. Rosenfeld, Eccleston & Wolf, P.C. on the brief), Baltimore, for appellee.

Argued before DAVIS, HOLLANDER, and KENNEY, JJ.

KENNEY, Judge.

Augustus C. Harris appeals the decision of the Circuit Court for Frederick County granting a Motion to Stay Proceedings and Enforce Arbitration Award ("Motion to Arbitrate") in favor of appellee, Clifford R. Bridgford, Esquire. That court directed the dispute to the Maryland State Bar Association Committee on the Resolution of Fee Disputes ("Committee") for binding arbitration. Harris poses two questions on appeal, which we have re-worded as follows:

I. Did the circuit court err in finding that Bridgford did not waive his right to arbitration by filing suit in District Court?

II. Are Harris's counterclaims asserting fraud and breach of contract in regard to fees already paid within the scope of the arbitration agreement?

For the reasons stated below, we shall hold that the circuit court did not err in finding that Bridgford did not waive his right to arbitration by filing suit in District Court and that Harris's claims of fraud and breach of contract are within the scope of the arbitration agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

Harris retained Bridgford to represent him in a divorce action. He had paid Bridgford $26,000 for his services prior to Bridgford's withdrawing as counsel. When he withdrew, Bridgford claimed outstanding legal fees of approximately $27,000. Harris filed a complaint with the Committee, to resolve the fee dispute through binding arbitration. The Committee appointed Client Representative, Ronald J. Levasseur, Esquire, to aid Harris in the process.[1] Thereafter, both Harris and Bridgford signed and executed an "Attorney's Consent to Arbitration" form with the Committee. This form provided, in pertinent part, that the parties agreed

---

1. Harris subsequently retained Levasseur as counsel in the instant matter.

to be legally bound by the rules, regulations, and decisions or award of the Maryland State Bar Association's Committee on the Resolution of Fee Disputes. Arbitration shall be conducted in accordance with the Regulations of the Committee on the Resolution of Fee Disputes and the Arbitration and Awards Subtitle, 3–201, et seq., of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, as amended. I realize by agreeing to such, the right to any further Court proceedings concerning the fee dispute, except enforcement of any possible award, is hereby waived.

Upon receiving the executed consent forms, the Committee scheduled the arbitration hearing for November 23, 1999. The scheduled arbitration was cancelled for reasons unclear in the record, but was due to be rescheduled. Prior to rescheduling, however, Harris wrote a letter to Levasseur on December 28, 1999, outlining his request to withdraw from arbitration and asking that Levasseur forward this request to the Committee. Bridgford, when notified over the telephone of Harris's withdrawal, strongly objected to this course of action and argued that Harris should not be permitted to withdraw from the arbitration process. Nevertheless, by letter on February 28, 2000, the Committee dismissed Harris's complaint for arbitration.

Nearly eighteen months later, on June 18, 2001, Bridgford filed a complaint in the District Court of Maryland for Frederick County, alleging breach of contract by Harris for "failing to pay for all . . . legal services and expenses through August 22, 1998." Bridgford claimed $25,000 in damages.[2] Harris prayed a jury trial, and the case was removed to the Circuit Court for Frederick County. On August 25, 2001, Harris answered the complaint and filed a counterclaim for breach of contract and fraud. Harris claimed, in pertinent part, that

3. Counterdefendant Bridgford failed to adequately discharge his contractual obligations to Harris by, among other

---

2. Presumably, for jurisdictional reasons, this was $2,000 less than the outstanding fees.

things: failing to apprise Harris óf the status of and developments in his case; billing Harris for services not performed or performed duplicatively; excessively billing Harris for unnecessary or unreasonable services; failing to zealously represent Harris's best interests; and breaching the implied covenant of good faith and fair dealing.

Moreover, Harris alleged that Bridgford "fraudulently and intentionally misrepresented the nature, extent and amount of legal work he performed for Harris for the purpose of defrauding Harris by causing him to incur significantly higher legal bills than what was reasonable and proper under the circumstances." Harris claimed $52,000, plus costs and interest, in compensatory damages and $100,000 in punitive damages.

On September 25, 2001, Bridgford filed the Motion to Arbitrate, arguing that, under Md.Code (1974, 2002 Repl.) § 3–206(a) of the Courts and Judicial Proceedings Article ("CJ"), an agreement to arbitrate is "irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract." He asked the circuit court to stay its proceedings pursuant to CJ § 3–209(a) and compel arbitration. Harris responded to the Motion to Arbitrate, arguing that Bridgford had waived arbitration by filing suit in the District Court.[3] On July 25, 2002, the circuit court held a motions hearing and granted Bridgford's Motion to Arbitrate. The court stated:

The rules of court clearly allow the court to stay proceedings pending the determination of another proceeding that may be affected or that may affect the issues raised in the action to be stayed. The Maryland Arbitration Act provides that the Court shall stay a proceeding involving an issue subject to arbitration if a petition to arbitrate has been filed.

Relying upon CJ § 3–206, the court also stated that "the consents [to arbitrate] entered into in this case are valid and enforceable and, in fact, [the statutory provision] further

---

**3.** Harris also argued that there was "no enforceable agreement between the parties compelling arbitration." That potentially interesting issue is not the subject of this appeal.

provides that they are irrevocable unless of course there's some grounds for revocation.[4] Because the court found no grounds for revocation of the agreement to arbitrate, it ruled that the Committee should not have granted Harris's request to withdraw from arbitration. Furthermore, the court found that Bridgford did not knowingly and intentionally waive his right to arbitration by filing suit in the District Court because "Mr. Bridgford was in a situation where he really had no choice because the action had been dismissed and essentially at that point left him no alternative but to file suit in court." This timely appeal followed.

## Discussion

### Standard of Review

█ Maryland Rule 8–131(c) provides:

**Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The clearly erroneous standard, however, "does not apply to a trial court's conclusions of law based on findings of fact." *Himelstein v. Arrow Cab,* 113 Md.App. 530, 536, 688 A.2d 491 (1997), *aff'd,* 348 Md. 558, 705 A.2d 294 (1998). In that instance, the proper standard is whether the court was "legally correct." *Heat & Power Corp. v. Air Prods. & Chems, Inc.,* 320 Md. 584, 592, 578 A.2d 1202 (1990).

### MSBA Arbitration

By way of background, and according to its website, the Maryland State Bar Association ("MSBA"), through its Committee, offers a "public service for clients who have a fee dispute with their attorney." To that end, the Committee has

---

4. We note that we find only one executed consent in the record, but appellant does not appeal the circuit court's determination.

developed a set of regulations governing its arbitration of fee disputes. According to the Regulations Governing the Resolution of Fee Disputes, the Committee has "jurisdiction" "over any disagreement concerning any fee paid, charged or claimed for legal services rendered by any attorney admitted to practice in this State...."[5] Its purpose is to "encourage the amicable resolution of fee disputes."

When a complaint is submitted to the Committee, a client representative is assigned to review it and conduct a preliminary investigation into its merits. If the client representative determines that there is no legitimate basis for the complaint, he or she writes a report to the Executive Council ("Council") of the Committee, recommending its dismissal. The Council may accept or deny the client representative's recommendation.

If the client representative determines that there is a legitimate fee dispute, he informs the complainant and forwards a copy of the complaint to the attorney involved. The parties are advised

> that the Committee has assumed jurisdiction but will delay any further steps until the expiration of a thirty day period during which the parties are urged to exert their best effort to reach an amicable resolution of their dispute. The client representative shall, during this period, attempt informally to amicably resolve the fee dispute by consulting with both the complainant and the attorney.

After thirty days, the client representative asks the parties to execute a consent to arbitrate.[6]

---

**5.** The Committee does not exercise authority to arbitrate fee disputes handled by certain local bar associations, including: Baltimore City, Baltimore County, Montgomery County, and Prince George's County.

**6.** If the complainant refuses to sign the consent form the matter will be closed. On the other hand, if the attorney refuses to sign the consent form, the Committee will proceed *ex parte,*

> and, if it finds that the client's allegations are justified, [it] will direct the client representative to represent the complainant to either institute suit for the refund of any portion of the fee paid and determined

Upon receipt of the consents to arbitrate, the case is referred for arbitration. Amounts in dispute greater than $3,000 are referred to a panel of three arbitrators; disputes less than or equal to $3,000 are referred to a single arbitrator. During the arbitration proceeding, each party is entitled to be heard, allowed to present evidence, and permitted to cross-examine witnesses. The hearing is then closed, and the arbitrators deliberate on an award. All proceedings pertaining to the arbitration, including any award, are confidential. In addition to the MSBA rules, the arbitration is subject to the Maryland Uniform Arbitration Act (the "Act"), codified at CJ §§ 3–201 through 3–234, which is expressly incorporated into the consent to arbitrate.

### Waiver

■ Harris challenges the circuit court's decision to grant Bridgford's Motion to Arbitrate, which was based on its finding that Bridgford did not waive his right to arbitration by filing suit in District Court.[7] Bridgford contends that he was only attempting to enforce the parties' legally binding agreement to arbitrate and did not intend to waive his right to arbitration by filing suit.

■ The Act "embodies a 'legislative policy in favor of the enforcement of agreement to arbitrate.'" *Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 641, 824 A.2d 87 (2003) (quoting *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91 (1983)). It confers jurisdiction on the courts "to enforce [an arbitration] agreement and enter judgment on an arbitration award." CJ § 3–202. In its enforcement of an

---

to be excessive or to resist any suit by the attorney seeking to collect any portion of the fee not yet paid and determined to be excessive.

**7.** This Court recognized in *RTKL Assocs. v. Balt. County,* 147 Md.App. 647, 655, 810 A.2d 512 (2002), that "a trial court's order either compelling or denying arbitration is a final judgment under C.J. § 12–301" (*citing NRT Mid-Atlantic, Inc. v. Innovative Props., Inc.,* 144 Md.App. 263, 277, 797 A.2d 824 (2002)). *See also Commonwealth Equity Servs., Inc. v. Messick,* 152 Md.App. 381, 392–93, 831 A.2d 1144 (2003).

arbitration agreement, the court essentially resolves a single issue—Is there an agreement between the parties to arbitrate? Specifically, CJ § 3–207 states:

(b) *Denial of existence of arbitration agreement.*—If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists.

(c) *Determination by court.*—If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition.

On appeal, Harris does not contend that there was no agreement to arbitrate. In fact, both parties voluntarily signed and executed a consent to arbitrate in lieu of litigation. In so doing, they acknowledged the following statement included in the consent form, "I realize that by agreeing to [arbitration], the right to any further Court proceedings concerning the fee dispute, except enforcement of any possible award, is hereby waived."

The circuit court found the consents to arbitrate "valid and enforceable" and no grounds to revoke the agreement. The court based its determination on CJ § 3–206, which states:

(a) *Validity.*—A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract.

Harris does not assign error to that determination.[8]

Rather, Harris claims that Bridgford "waived" his right to arbitration by filing suit in District Court. Indeed, at oral

---

8. No Maryland court has addressed the issue of an unilateral withdrawal from arbitration, but several courts in other jurisdictions have considered the issue. *See Juhasz v. Costanzo,* 144 Ohio App.3d 756, 761–63, 761 N.E.2d 679 (2001) (statutory arbitration, unlike common law arbitration, does not allow for the unilateral withdrawal of one party); *Titus & McConomy v. Jalisi,* 713 A.2d 646, 649 (1998) (arbitration committee properly refused to allow a party to withdraw from a fee

argument, he asserted that waiver was the central issue in the case and urged the adoption of a per se rule—that the filing of the suit automatically waived arbitration. Bridgford contends that waiver must be "knowing and intentional," and that he did not intentionally waive his right to arbitration. The circuit court found that Bridgford's verbal objections to the dismissal expressed his dissatisfaction with the Committee's decision to dismiss Harris's complaint and that filing the suit did not constitute a waiver.

Apparently it is unrebutted at this point that there was some objection by Mr. Bridgford when the dismissal was received. I find as a fact based on the status of the evidence in this case that he did object. Further, with respect to waiver, Mr. Bridgford was in a situation where he really had no choice because the action had been dismissed and essentially at that point left him no alternative but to file suit in court. And I cannot find that he's waived his right to enforce the consents to arbitrate and I can't find any affirmative waiver by Mr. Bridgford which could be construed as a knowing and intentional relinquishment of his right to submit this dispute to arbitration.

 Waiver is defined as

the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. '[A]cts relied upon as constituting a waiver of the provisions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions.

*Charles J. Frank, Inc. v. Associated Jewish Charities, Inc.,* 294 Md. 443, 449, 450 A.2d 1304 (1982) (*quoting BarGale*

---

dispute arbitration); *Invicta Plastics, U.S.A., Ltd. v. Superior Court,* 120 Cal.App.3d 190, 192, 174 Cal.Rptr. 476 (1981) (stating that "there is no basis for unilateral withdrawal of a case from judicial arbitration") (citations omitted); *Knutson v. Lasher,* 219 Minn. 594, 600, 18 N.W.2d 688 (Minn.1945) (an irrevocable agreement to arbitrate does not allow for the withdrawal of one of the parties).

*Indus., Inc. v. Robert Realty Co.,* 275 Md. 638, 643, 343 A.2d 529 (1975)). Because "the right to arbitrate is a matter of contract," the right can be waived. *Id.* at 448, 450 A.2d 1304. Moreover, "whether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case." *Id.* at 449, 450 A.2d 1304 (citations omitted).

Harris heavily relies on *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 468 A.2d 91 (1983). In *Gold Coast Mall,* a landlord and tenant signed a lease agreement containing a provision that required arbitration for resolution of all disputes. That agreement stated, in pertinent part:

> Arbitration. *In the event of disagreement between the parties* during the term hereof which they are unable to resolve within sixty days by negotiation between them, then *it is agreed that such disagreement shall be submitted by the parties to 'informal three-man arbitration,'* as hereinafter defined.[9]

*Id.* at 101–02, 468 A.2d 91.

After a dispute had arisen regarding percentage rents, the landlord filed suit against the tenant "concerning the interpretation of a clause in the agreement requiring the tenant to pay the landlord a percentage of the rentals received from its subtenants." *Id.* at 100, 468 A.2d 91. The tenant filed a motion to compel arbitration. The trial court found that under the lease agreement, "the tenant was required to arbitrate the percentage rental dispute, the landlord was not," and that the tenant had waived its right to arbitrate by failing to

---

9. Informal three-man arbitration is defined in the agreement as:

 " 'Informal three-man arbitration,' if required hereunder, shall mean the following procedure: *Each party to the disagreement, within fifteen (15) days after the 60-day negotiation time, shall appoint one arbitrator* to represent him; the two arbitrators thus appointed shall, within fifteen (15) days after the second of them is appointed, jointly appoint a disinterested, mature and competent person as the third arbitrator; and within fifteen (15) days after said third arbitrator is thus designated, the three arbitrators, by majority vote, shall settle and decide the disagreement. . . ."

 *Gold Coast Mall, Inc.,* 298 Md. at 102, 468 A.2d 91.

timely demand arbitration. *Id.* The Court of Appeals disagreed, saying that "[b]ecause the landlord was asserting a claim, it was the landlord's and not the tenant's initial obligation to initiate arbitration. The landlord, however, did not initiate arbitration. Rather, it sought relief by asserting its claim in the trial court. This action by the landlord constituted a refusal to arbitrate." *Id.* at 114, 468 A.2d 91. The court continued, "the tenant did not engage in any conduct inconsistent with an intention to insist upon enforcing the right to arbitrate. Accordingly, the tenant did not waive the right to arbitrate the percentage rental dispute." *Id.* at 115, 468 A.2d 91.

Harris implies that *Gold Coast Mall* effectively creates a per se rule that initiating litigation waives the right to arbitration. He relies on the Court's statement that "[i]t is the responsibility of the party asserting the claim to initiate arbitration. A party asserting a claim who sues instead of seeking arbitration is in essence refusing to arbitrate and is itself in default of the arbitration agreement." *Id.* at 113–14, 468 A.2d 91. At first blush, this language might appear to support Harris's contention.

This case, however, presents an overall different set of facts than *Gold Coast Mall.* In that case, neither party initiated arbitration when their dispute first arose. Here, Harris had filed a complaint with the Committee, initiating arbitration. Bridgford did not refuse to arbitrate, but instead agreed to resolve their dispute by arbitration. It was Harris who refused to arbitrate, and was in default of the arbitration agreement. His withdrawal from the arbitration process cannot be overlooked.

██ Furthermore, this case and *Gold Coast Mall* present different issues. In *Gold Coast Mall,* the Court of Appeals was considering "whether the tenant, against whom the landlord's claim is asserted, ha[d] waived the right to arbitrate by failing to appoint an arbitrator within the time constraints set forth in the agreement." *Id.* at 108, 468 A.2d 91. In this case, we are asked to consider whether Bridgford waived his right

206

to arbitration by filing suit in the District Court for the unpaid fees after Harris's unilateral withdrawal from arbitration.[10]

We were not directed to, nor have we found, any case that holds that the filing of a suit, after the unilateral withdrawal from arbitration by the opposing party, constitutes a waiver of the right to arbitration. Maryland courts have indicated, however, that full judicial resolution of the dispute constitutes a waiver, but some limited participation in judicial proceedings does not. *See Gold Coast Mall*, 298 Md. at 113–15, 468 A.2d 91 (party against whom a claim is asserted does not waive the right to arbitration by not initiating arbitration); *Charles J. Frank, Inc.*, 294 Md. at 450, 450 A.2d 1304 (suggesting that participation in judicial proceedings without making a motion to compel arbitration may amount to a waiver of the right to arbitration); *Commonwealth Equity Servs., Inc. v. Messick*, 152 Md.App. 381, 389, 831 A.2d 1144 (2003) (participation in extensive discovery is a factor in determining waiver); *The Redemptorists v. Coulthard Servs.*, 145 Md.App. 116, 143, 801 A.2d 1104 (2002) (holding that "limited participation in the judicial forum" does not constitute waiver).

Certainly, the filing of a suit is a significant act in a waiver calculus, and in some instances it perhaps could be dispositive. We are persuaded, however, that a per se rule is the antithesis of the proposition that a knowing and intentional waiver of arbitration is generally a question of fact and ordinarily turns on the factual circumstances of each case. As we said recently in *The Redemptorists*, "there is no 'bright-line' test for determining waiver, ... the determination of what conduct constitute[s] an 'intentional relinquishment' of one's right to arbitrate is highly factually-dependent." *The Redemptorists*, 145 Md.App. at 137, 801 A.2d 1104.

---

**10.** Even if we were to conclude that filing suit waived arbitration for the unpaid fees, it would not necessarily follow that the suit waived arbitration of the dispute regarding fees previously paid. That issue is raised by Harris's counterclaim. *See Charles J. Frank, Inc.*, 294 Md. at 448, 450 A.2d 1304; *The Redemptorists v. Coulthard Servs.*, 145 Md.App. 116, 142–43, 801 A.2d 1104 (2002).

In *Stauffer Constr. Co. v. Board of Educ.*, 54 Md.App. 658, 460 A.2d 609 (1983), a contractor sought to enforce an arbitration agreement in a construction contract after filing a suit in the circuit court for the same sum of money claimed in the demand for arbitration. One of several grounds raised by the owner for staying arbitration was that the contractor had waived his right to arbitration by filing the law suit. The contractor contended that the suit was filed to satisfy a statute of limitations issue.[11] The circuit court found waiver on another ground. This Court ultimately remanded the case for the circuit court to consider, among other grounds, whether "by filing a lawsuit against appellee, appellant [had] effectively waived its contractual right to arbitration." *Id.* at 672, 460 A.2d 609. If filing the suit was determinative as a matter of law, there was no need to remand the issue to the circuit court.

, Harris essentially asks that we treat Bridgford's filing in the District Court as the opening salvo in the fee dispute. To be sure, the filing was an important event, but it is only one factor that is to be considered in light of all the circumstances surrounding the dispute and the efforts to resolve it. Based on the facts in this case, the applicable circumstances arise along a timeline that begins some eighteen months before Bridgford filed suit.

The first formal shot in this battle over Bridgford's fees was fired when Harris filed his complaint with the Committee. That action resulted in an acknowledged agreement between the parties to arbitrate the dispute. Later, it was Harris, over Bridgford's objection, who unilaterally withdrew from arbitration. The situation was further muddied when the Committee, the sponsor of the arbitration process, agreed to Harris's request and discontinued the very process it had established to resolve fee disputes. Abandoned by both Harris and the Committee, Bridgford alone remained on the agreed upon field of battle. This fact, in itself, might cast some doubt as to

---

11. In regard to limitations, we note that in this case the unpaid fees had accrued as of August 22, 1998. Suite was filed on June 18, 2001.

the appropriate forum in which to resolve the dispute and the continued viability of any agreement to arbitrate provided by the Committee.

There was, of course, a more appropriate action to be taken. The Act provides that "[i]f a party to an arbitration agreement ... refuses to arbitrate, the other party may file a petition with a court to order arbitration." CJ § 3–207. *See also Town of Chesapeake Beach v. Pessoa Constr. Co.*, 330 Md. 744, 752, 625 A.2d 1014 (1993) (stating that a petition to compel arbitration can be filed as a separate action). Harris contends that the fact that Bridgford is a lawyer and did not file a petition pursuant to CJ § 3–207 requires a holding that he waived his right to arbitrate. To hold otherwise, he argues, is to reward an attorney's ignorance of the law. We are not persuaded, however, that lawyers generally are necessarily familiar with MSBA fee dispute proceedings and, even if they were, the effect of a permitted unilateral withdrawal from arbitration on the consent to arbitrate.

We hold that Bridgford's resort to litigation prior to filing a petition with the court to order arbitration did not constitute, as a matter of law, a knowing and intentional waiver of his right to arbitrate. Rather, it was a fact to be considered in the totality of the circumstances, which the circuit court clearly considered. In light of all the circumstances, including the aborted arbitration process, it determined that Bridgford had not waived his right to arbitration by filing suit. That finding, even if another fact finder might have reached a different conclusion, is not clearly erroneous.

### Scope of Arbitration Agreement

Next, Harris contends that his counterclaims asserting fraud and breach of contract against Bridgford are outside the scope of the arbitration agreement. In *The Redemptorists*, 145 Md.App. at 150–51, 801 A.2d 1104 (citations omitted), Judge Adkins, writing for this Court, said:

> In determining the scope of an arbitration provision, a court must consider two competing aims. A court must resolve any doubts concerning the scope of arbitrable issues

in favor of arbitration, reflecting a strong public policy in favor of arbitration. In doing so, however, the contract nature of arbitration must be respected, so as not to require a party to submit a dispute to arbitration that it has not agreed to arbitrate. In short, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."

■ Here, the language of Harris's complaint to the MSBA clearly indicates that he intended to have all elements of the fee dispute between the parties included as part of the arbitration. He alleged the following:

(1) At my initial meeting with Mr. Bridgford he told me that the divorce case would last between 6 mos. and one year. Our initial meeting was 6/1/95 and the case was not settled until the fall of 1998.(2) Additionally he told me that the entire cost would be approximately 15 to 20,000.00 dollars, his bill ultimately was 52,000.00 dollars. (3) He quoted in writing that his hourly rate would be 150.00 per hour, he billed me at the rate of 175.00 per hour. (4) It is my belief that Bridgford purposely extended the case to maximize his earning and was not concerned with my best interest at any time during the entire case. At the conclusion of the case I was held liable foreverything [sic] and believe that I could have gone to court without representation and not done any worse.

The figure of $52,000 obviously includes fees previously paid as well as those that remained outstanding. Accordingly, we hold that all issues related to the fee dispute, including the issues of fraud and breach of contract, were subject to the arbitration agreement.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**