964 A.2d 703

**Joel Marc ABRAMSON**

v.

**Ronald WILDMAN.**

**No. 1768, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Feb. 4, 2009.

---

Michael B. Hamburg (Harry A. Baumohl, on brief), Baltimore, for Appellant.

Allen J. Kruger, Laurel, for Appellee.

Panel: JAMES R. EYLER, ZARNOCH, J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

ZARNOCH, J.

"Few modern actions against attorneys are for breach of a written or express contract." Mallen & Smith, *Legal Malpractice* (2008) at § 8:6. This is one of them.

This litigation began in August of 2004, when appellant Joel Abramson filed a breach of contract action against appellee Ronald Wildman in the District Court for Howard County. Abramson sought to recover more than $13,000 in unpaid legal fees due under a retainer agreement entered into by the parties. In turn, in February 2005, Wildman filed a Counterclaim, alleging, among other things, that Abramson breached a contract to represent him in a "professionally responsive" manner, primarily in connection with the law firm's handling of a custody dispute.[1] Wildman sought the return of $24,525 in legal fees he had paid.[2] Appellant had also previously prayed a jury trial, which led to the cases being transferred to the circuit court. There, answers were filed to the complaint and counterclaim and Abramson propounded interrogatories and made a request for production of documents.

In April 2005, Abramson's counsel made a written demand for arbitration of the claims of both parties pursuant to a provision in the retainer agreement. This was followed the next month by the filing of a Petition to Compel Arbitration and Motion to Stay Proceedings, which were denied after a

---

1. The counterclaim alleged:
 Attorney Abramson breached the agreement in the following ways:
 a) preparing and presenting to a trial judge a false financial statement;
 b) failing to timely advise Mr. Wildman of a trial subpoena requesting certain documents;
 c) failing to present to a trial judge competent evidence/testimony as to Mr. Wildman's financial circumstances;
 d) failing to properly advise Mr. Wildman as to the merits of his case;
 e) failing to properly advise Mr. Wildman as to settlement options;
 f) charging for unnecessary and duplicative legal work; and
 g) in other ways.

2. Although Abramson was named as the defendant, he did not personally handle everything done in the case. At times, Wildman was also represented by another attorney in the firm.

hearing. The cases went to trial before a jury in September 2007. The jury rejected Abramson's fee claim and sided with Wildman on his counterclaim, awarding him the $24,525 he prayed. Post-trial motions were denied and this appeal followed.

For reasons set forth below, we affirm the decision of the circuit court.

## QUESTIONS PRESENTED

Appellant has presented these questions for our review:

I. Did the trial court err in denying Abramson's Petition to Compel Arbitration?

II. Did Wildman fail to make a *prima facie* case of breach of contract against Abramson in proving the alleged breach of the subject contract?

III. Did the trial court err in providing the jury with a jury instruction concerning competence?

IV. Did the trial court improperly admit evidence of Abramson's competency at the trial in this matter?

V. Did Wildman fail to make a *prima facie* case of damages against Abramson in relation to Abramson's alleged breach of the contract, or otherwise cause the jury to speculate as to damages?

## FACTS AND PROCEEDINGS

The March 26, 2003 retainer agreement, written in letter form to Wildman and signed by both parties, is the starting point for our resolution of these issues. It begins:

Thank you for expressing the desire for our firm and the attorneys herein, to represent you with reference to your marital difficulties. *You may expect our firm to be both sensitive and professionally responsive to your situation.* (Emphasis added.).[3]

---

3. The agreement's reference to "marital difficulties" is inaccurate. Abramson was engaged primarily to advise and represent Wildman in a custody dispute.

After detailing billing and compensation requirements, the agreement stated:

> If in the course of our representation, if you believe that our advice, conduct or ethics is not satisfactory, you agree to communicate to us in writing promptly so we can attempt if appropriate to rectify the problem.[4]

The agreement also provided:

> Should you decide to terminate our representation in this matter, such termination must be in writing. Until such written termination is received, you will continue to be responsible for all fees and expenses incurred as set forth above. We have no obligation to represent you on any appeal unless a fee arrangement for same is reduced to writing. *Client is aware that we make no warranties or representations concerning the success of your claim or the favorable outcome of any legal action that may follow.* Nor do we make any representations as to the cost of representation as to [*sic* ] there are many unknown factors such as the efforts of any opposing party. (Emphasis added.).

With respect to remedies and dispute resolution, the agreement stated:

> Should we have to bring suit to collect any monies, which are due, and owing to us under this Agreement, it is agreed that if the Court should rule in our favor, you shall pay an additional 15 percent of any said judgment for attorney's fees incurred in prosecution of said case. *You agree in the event you have any complaint or controversy regarding our representation, either in terms of monies due and owing by you or the nature or competency of our representation, you agree to submit such issues to binding unappealable arbitration* with the American Arbitration Association. You understand by agreeing to same you are waiving your rights to file suit and have a trial, jury and otherwise, to litigate and resolve these issues. (Emphasis added.)

---

**4.** Compliance with this provision does not appear to be the focus of this appeal.

The arbitration issue was presented early in the litigation with Wildman arguing, among other things, that the right to arbitration had been waived by Abramson's participation in judicial proceedings. In rejecting appellant's contentions, the circuit court set forth two grounds:

That *contract can not be in derogation of public policy.* I think it is patently unfair for an attorney who has that advantage in training and in practice, to write such a one sided fee agreement and have someone who is coming in looking for representation to sign it.

I can sue you but you can't sue me. If I sue you you're going to have to pay attorney fees. You're going to have to do this, you're going to have to do that but, you're waiving your right to litigate and resolve these issues. I, I just think, besides *I don't reach a waiver issue but I think that there is also a waiver.* (Emphasis added.).

Throughout the litigation, Abramson challenged Wildman's breach of contract theory as a disguised attempt to press a legal malpractice tort. Not only was this defense advanced in an attempt to defeat appellee's breach of contract claim, it was raised to challenge the court's jury instructions on lawyer competence.[5] It also surfaced in Abramson's attack on the trial court's admission of evidence with respect to the lawyer's competence.[6] The contract/competency issue also affected the

---

**5.** The instruction was "A Lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The instruction is identical to Rule 1.1 of the Maryland Lawyer's Rules of Professional Conduct.

**6.** At trial, the following exchange occurred between appellant and appellee's counsel:

Q. Okay. In the same contract, in your opinion, your understanding, what obligations did you have to him? Or your office had to him?

A. What obligation did I have to him? I had an obligation to act in a professional manner. I had an obligation to—to—to the best of my ability to perform the services, and within my profession in an ethical and, and honest manner.

Q. And to the same standard of care as other lawyers?

COUNSEL FOR ABRAMSON: 'Jection.

damage claim as Wildman claimed he was entitled to contract damages equal to the previously-paid attorney's fees.[7]

## DISCUSSION

In essence, the five questions raised by Abramson can be distilled into two: whether arbitration was precluded or waived and whether appellee properly asserted a breach of contract action. The two reasons given by the circuit court for rejecting arbitration were that the arbitration clause in the retainer agreement was so one-sided as to violate public policy and that appellant had waived arbitration by his actions in the

---

THE COURT: Sustain.
Q. Are you, were you permitted to give a bad lawyer?
COUNSEL FOR ABRAMSON: 'Jection.
THE COURT: Sustain.

\* \* \* \* \*

Q. Were your obligation and your office's obligations under this contract to provide competent legal advice?
COUNSEL FOR ABRAMSON: 'Jection.
THE COURT: Overruled. You can answer that.
A. Yes.
Q. To prepare competently?
A. Yes.
Q. To—
COUNSEL FOR ABRAMSON: 'Jection.
THE COURT: Overruled.
Q. To competently know the law in the State of Maryland?
A. Yes.
Q. To competently advise him?
A. Yes.
Q. To competently represent him.
A. Yes.
An expert on domestic relations law was also permitted to testify on Wildman's behalf on whether Abramson did "a competent job" for Wildman.

7. At trial, appellee's counsel gave the following explanation of his damage theory to the court:
The contract is clear. My duty is to pay him. His duty is to do a good job and take care of me. And we're alleging Mr. Abramson did not do a good job and did not take care of him. In fact, didn't particularly care for this case. And as a result, he's spent $25,000 he didn't need to spend. You want his damages? They're $24,525. Every single penny he paid Mr. Abramson's office between March of 2003 and March of 2004. It couldn't be any clearer than that.

judicial forum.[8]

## A. PUBLIC POLICY VIOLATION

The "public policy" argument was not made before the circuit judge who ruled on the Petition to Compel Arbitration. Nor is it pressed with great force in this Court. It is possible that the circuit court was simply responding to appellee's contention (made both in the circuit court and here) that the agreement's provision for access to or denial of judicial remedies was so one-sided as to lack mutuality.

Courts across the country have reached differing results with respect to challenges to the validity or enforceability of mandatory arbitrary provisions in lawyer retainer agreements, particularly with respect to the arbitration of lawyer malpractice claims.[9] *Compare Kamaratos v. Palias,* 360 N.J.Super. 76, 821 A.2d 531, 535 (2003)(citing *Restatement (Third) on the Law Governing Lawyers* (2000) at § 42, comment b(iv), for the proposition that "there is nothing inherently improper about a lawyer and a client agreeing to arbitrate a fee dispute . . ."); *McGuire, Cornwell & Blakey v. Grider,* 765 F.Supp. 1048, 1051 (D.Colo.1991)("The arbitration provisions here do not prospectively limit lawyer liability to the client. Rather, they merely shift determination of the malpractice claim to a different forum."); *Powers v. Dickson, Carlson & Campillo,* 54 Cal.App.4th 1102, 63 Cal.Rptr.2d 261, 266 (2nd Dist.1997)(Arbitration clause in retainer agreement was not a contract of adhesion.); and *Derfner & Mahler, LLP v. Rhoades,* 257 A.D.2d 431, 683 N.Y.S.2d 509, 510 (1999)(On its face, arbitration agreement did not violate rules of ethics), *with In re Godt,* 28 S.W.3d 732, 739 (Tex.App.2000) (Arbitra-

---

**8.** Appellant argues that the latter issue was not the basis of the circuit court decision. However, despite some ambiguity on the point, the court's opinion discloses that the last word on the subject was "I think there is also a waiver."

**9.** Appellant took the position in the circuit court that the arbitration agreement's reference to complaints regarding "competency of our representation" meant that lawyer malpractice disputes were subject to arbitration.

tion provision was not enforceable because the client did not act on the advice of independent counsel and independent counsel did not sign the agreement.); [10] *Thornton v. Haggins,* 2003 WL 23010100 (Ohio App.2003)("We are persuaded by the cases finding such agreements unenforceable with regard to the malpractice disputes. [W]e agree that the best interests of the client require consultation with an independent attorney ...."); *Larrison v. Scarola Reavis & Parent LLP,* 11 Misc.3d 572, 812 N.Y.S.2d 243, 248 (N.Y.Sup.Ct.2005)(A "one-sided" arbitration clause in a retainer agreement violated public policy and was unenforceable.); and *Kamaratos v. Palias, supra,* 821 A.2d at 539–540 (Fuentes, J. concurring)("The insertion of a commercial arbitration clause in a retainer agreement inherently violates [the trust between a lawyer and his client] by pitting the lawyer's interest against the client's. The terms and features of an arbitration clause are designed, not for the client's benefit, but to protect and advance the lawyer's interest in a forum of his or her own choosing."). *See also* Annot. Validity and construction of agreement between attorney and client to arbitrate disputes arising between them. 26 A.L.R. 5th 107 (1995).

The circuit court's conclusion that the arbitration clause violated public policy differs from the situation presented in these cases in that it focused on the agreement's apparent unfairness in allowing the lawyer to go to court to sue for his fees, while denying the client any resort to a judicial forum.[11] Appellant argues that although under the agreement there is an initial difference between the parties in access to judicial remedies, once appellee pressed his counterclaim, it forced both the fee dispute and the later breach of contract claim into

---

**10.** This also appears to be the rule in Illinois and Pennsylvania. Russo, *The Consequences of Arbitrating a Legal Malpractice Claim: Rebuilding Faith in the Legal Profession,* 35 Hofstra L.Rev. 327, 329 (2006).

**11.** *See Restatement (Third) of the Law Governing Lawyers* § 42, comment b(iv) (2000) ("An agreement to arbitrate should meet standards of fairness....").

arbitration. Thus, Abramson contends that the agreement is neither one-sided nor unfair.

As interesting as this question is, it is one we need not resolve, because we find that the circuit court was correct in its alternative holding that appellant waived his right to arbitration by his participation in the judicial forum.[12]

## B. WAIVER OF ARBITRATION

A contracting party may intentionally relinquish his or her right to arbitrate. *Brendsel v. Winchester Construction Co.*, 162 Md.App. 558, 574, 875 A.2d 789 (2005). A finding of such a waiver is highly factual and a decision by the circuit court premised on those facts will not be disturbed on appeal unless it is clearly erroneous. *Id.*

On a number of occasions, Maryland appellate courts have addressed the issue of whether the right to arbitrate has been waived by participation in litigation that is inconsistent with an intent to insist upon enforcing arbitration. Participation in a judicial proceeding that results in a final judgment may, in certain circumstances, waive the right to arbitrate. *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 450 A.2d 1304 (1982). Some "limited participation" in judicial proceedings does not constitute a waiver. *Harris v. Bridgford*, 153 Md.App. 193, 206, 835 A.2d 253 (2003). Whether an answer directed to the merits is filed is a factor. *Brendsel, supra*, 162 Md.App. at 576, 875 A.2d 789. Participation in "extensive" discovery is a factor in determining waiver. *Commonwealth Equity Servs. Inc. v. Messick*, 152 Md.App. 381, 400, 831 A.2d 1144 (2003). However, also relevant is whether a party utilized discovery devices that would not have been available in arbitration. *Id.* at 401, 831 A.2d 1144. Delay in attempting to compel arbitration, by itself, may not be conclusive, *id.* at 397–98, 831 A.2d 1144, although coupled with prejudice to the other party can support

---

**12.** Unlike the public policy / validity question, the waiver issue was fully argued both here and in the circuit court.

a finding of waiver. *Id.* The filing of suit can be a "significant act in a waiver calculus, and in some instances it perhaps could be depositive." *Harris, supra,* 153 Md.App. at 206, 835 A.2d 253. Nevertheless, if there is a legitimate reason for participating in litigation, it will not be deemed a waiver. *See, e.g., Charles J. Frank, Inc., supra,* 294 Md. at 454, 450 A.2d 1304 (Litigation of an unrelated claim does not constitute a waiver of the right to arbitrate other claims.); and *Harris,* 153 Md.App. at 207–08, 835 A.2d 253 (Filing suit after party withdrew from arbitration is not a waiver.) *See also* Annot. Defendant's participation in action as waiver of right to arbitration of dispute involved therein, 98 A.L.R.3d 767 (1980).

■ Balancing the relevant factors contained in the record, the circuit court was not clearly erroneous in its finding that appellant had waived his right to arbitrate. Although appellant can point to the retainer agreement itself as expressly authorizing his right to sue, and excusing the arbitration of his claim for fees, this does not neutralize this factor. The agreement required Wildman to arbitrate any fee "controversy." Even an Answer by appellee (or a Notice of Intention to Defend) contesting fee liability should have triggered a response by appellant that arbitration was required.[13] We believe that the circuit court could reasonably have concluded that appellant's failure to initiate arbitration at that point was a factor favoring appellee's opposition to arbitration.

Abramson filed a Notice of Intention to Defend and later an Answer to Wildman's Counterclaim. Then, more than a month before petitioning to compel arbitration, appellant served on Wildman interrogatories and a Request for Production of Documents.[14] This discovery, although not "extensive", was information that appellant could not have obtained in

---

**13.** Appellee's filing of a Notice of Intention to Defend in the district court on January 19, 2005, did not deter appellant from his litigative course. Rather, Abramson filed the Petition to Compel Arbitration in this matter in May, 2005 only after answering the Counterclaim.

**14.** The record is silent on when responses were made to this discovery request.

arbitration. *Commonwealth Equity Services, Inc., supra,* 152 Md.App. at 401, 831 A.2d 1144. Nearly four months passed between Wildman's filing of his Counterclaim and Abramson's filing of his Petition to Compel Arbitration. Wildman was unable to obtain discovery during this period and not until the circuit court in August, 2005 rejected the Petition to Compel Arbitration.[15]

Finally, unlike those cases where a party's involvement in some phase of litigation was legitimately explainable and thus, not inconsistent with an intent to arbitrate, *see* p. 10, *supra,* appellant has given no reason for persisting in the litigation. The belated insistence on arbitration has all the markings of a simple strategic decision to deny appellee a judicial forum and a jury trial.

For all of these reasons, we are unable to conclude that the circuit court was clearly erroneous in its finding that appellant had waived his right to arbitration by litigative actions inconsistent with an intent to enforce arbitration.[16]

## C. BREACH OF CONTRACT

Abramson concedes that the retainer agreement contains "express contractual obligations" that Wildman "may expect our firm to be both sensitive and professionally responsible to your situation." He also concedes, as he must, that he has a duty to provide competent legal advice and representation. *See* n. 6, *supra.* However, appellant contends that this specif-

---

**15.** At the August 5, 2005 hearing on the Petition to Compel Arbitration, Wildman's counsel told the court:

[W]e filed interrogatories, a request for production of documents. They were served to Mr. Abramson back on March 17th. There have been a couple of letters I've sent to Mr. Rand asking him to comply. And they've taken the position that they're not going to answer the questions because this should be in arbitration. And we do have a scheduling order, Your Honor. And the scheduling order requires me to have my experts by September 1st. That all discovery should be completed by October 1st. So we're less than two months out from that, and I think we have been prejudiced by that.

**16.** In light of this holding, we do not reach appellee's argument that the arbitration agreement lacked mutuality of obligation.

ic duty is not found in the retainer agreement and that the breach of such a duty can be remedied only by a tort action for legal malpractice.[17] In our view, this is not an accurate statement of the law.

In *Baker, Watts & Co. v. Miles & Stockbridge,* 95 Md.App. 145, 189, n. 11, 620 A.2d 356 (1993), this Court said that "an action against an attorney for malpractice may be brought in contract or in tort." *Baker, Watts* relied on *Flaherty v. Weinberg,* 303 Md. 116, 134, 492 A.2d 618 (1985), where the Court of Appeals said that it has classified an action for malpractice as "being one in contract," whose "gravamen is the negligent breach of the contractual duty." [18] This also appears to be the *Restatement's* position. *See Restatement (Third) of the Law Governing Lawyers* (2000) at § 55, comment c. ("Ordinarily, a plaintiff may cast a legal-malpractice claim as a tort claim, a contract claim, or both . . .").

Before these pronouncements in *Baker, Watts and Flaherty,* this Court in *Fishow v. Simpson,* 55 Md.App. 312, 318, 462 A.2d 540 (1983), expressed doubt with respect to the proposition that "legal malpractice is a breach of contract in every case." In *Fishow,* a disappointed litigant asserted that her lawyer breached his contract with her by failing "to act adequately" in pursuing a particular theory in presenting her claim. *Id.* at 317, 462 A.2d 540. There, the client apparently premised her case on an implied contractual duty to exercise ordinary skill and knowledge in the rendition of professional

---

**17.** Appellant couches this issue as a failure "to make a *prima facie* case of breach of contract." However, his argument does not focus on whether there was sufficient evidence of a breach of a contractual obligation, but on whether, as a matter of law, a contractual obligation existed at all.

**18.** *Flaherty* also notes:

[R]egardless of whether a plaintiff brings an attorney malpractice action in contract or tort, he must allege and prove the existence of a duty between the plaintiff and the defendant in the first instance. Once the plaintiff satisfies this threshold requirement he must allege and prove the remaining elements of each theory of recovery to establish liability. 303 Md. at 134, 492 A.2d 618.

services. *Id.* In affirming a summary judgment for the lawyer, this Court said, *id.* at 318, 462 A.2d 540:

> We agree that legal malpractice may give rise to an action for breach of contract in cases involving employment of an attorney to perform a specific service in accordance with clearly stated instructions from the client-employer. The present case, however, does not fall within that class of cases, and the court below properly so ruled.

Appellant appears to regard this language in *Fishow* as limiting a contract action for legal malpractice only to a suit for a violation of client instructions. However, this is only one type of lawyer malpractice that can be asserted in a contract action. *Mallen & Smith's* Legal Malpractice treatise recognizes contract actions for: 1) breach of an express contract; 2) breach of an implied contract; 3) unsuccessful guarantee of a specific result;[19] 4) and violation of a client's instructions. *Id.* at §§ 8:6–8:9. *See also Restatement, supra,* at § 55, comment c (distinguishing between a suit for disobeying a client's instructions and other contract actions against a lawyer.).[20]

 In any event, we need not assess the limits of *Fishow* or its consistency with later cases. It was an *implied* contract case, not one involving an *express* promise of professional responsibility, such as that found here.[21] Appellee

---

**19.** The retainer agreement here expressly excluded any warranty or representation of a favorable outcome. *See* p. 3, *supra.*

**20.** A contract action for lawyer malpractice is of ancient vintage. In *Wilcox v. Plummer's Ex'rs,* 29 U.S. 172, 182, 4 Pet. 172, 7 L.Ed. 821 (1830), an assumpsit action for lawyer malpractice, the Supreme Court said that "[w]hen the attorney was chargeable with negligence or unskillfulness, his contract was violated ...".

**21.** An alternative theory for an "express" contract to exercise ordinary care and diligence in providing client advice and representation might be found in the "law of the place" doctrine. Under this rule, "subsisting laws" enter into and form part of a contract as if "expressly" referred to or incorporated in its terms. *State v. Burning Tree Club, Inc.,* 315 Md. 254, 269, n. 5, 554 A.2d 366 (1989). One source of these "subsisting laws" is the common law. *See Denice v. Spotswood I. Quinby, Inc.,* 248 Md. 428, 433, 237 A.2d 4 (1968); and *Williston on*

concedes that this was an express contractual obligation. As a "specific promise," it was enforceable in a breach of contract action. *See Mallen & Smith, supra,* § 8:6. For these reasons, we see no merit to appellant's contention that Wildman's claim could only be brought as a legal malpractice tort and not as a breach of contract.

## D. JURY INSTRUCTIONS

██ Appellant contends that the jury should not have been instructed regarding lawyer competence. However, liability for a breach of an asserted express contract of lawyer competence is no different than liability for a legal malpractice tort. *See Baker, Watts & Co. v. Miles & Stockbridge, supra,* 95 Md.App. at 189, n. 11, 620 A.2d 356; and 26 Am.Jur.2d *Proof of Facts* § 26–703 (1981) ("Because the attorney's contract for professional services creates the relationship giving rise to his duty to exercise reasonable care under the circumstances in that undertaking, his negligence constitutes a breach of contract as well as a tort. In either case, the attorney's litigation is based on negligence and is governed by the duty to exercise reasonable care."). In a case such as this, the court was required to instruct the jury regarding lawyer competence. The definition given to the jury based on the Maryland Lawyers' Rules of Professional Conduct (Rule 1.1) was undoubtedly a correct one.[22]

## E. ADMISSION OF EVIDENCE

In a similar vein, Abramson objects to the trial court's admission of evidence regarding appellant's competency.

---

*Contracts* (4th ed.1999) at § 30.19. It is clear that under Maryland's caselaw (derived from English common law), "every client employing an attorney has a right to the exercise, on the part of the attorney, of ordinary care and diligence in the execution of the business intrusted to him, and to a fair average degree of professional skill and knowledge...." *Cochrane v. Little,* 71 Md. 323, 331–32, 18 A. 698 (1889).

22. Using the Rules' definition of competence is not the same as premising a civil action on violation of the Rule. Appellant's liability arises from an express contract concerning his competence.

However, as noted above, because Maryland caselaw allows a lawyer malpractice claim to be brought as a breach of contract action under the circumstances present here, evidence regarding competency would be relevant to the case, if not necessary for appellee to prevail.

## F. DAMAGES

■ Appellant challenges the jury award of $24,525, the amount of attorney's fees paid by appellee. He contends that Wildman showed no damages resulting from the breach of the agreement, that the award was speculative and that the jury was confused.[23]

We have already concluded that it was permissible for Wildman to bring a legal malpractice claim as an action for breach of contract. It is not unusual for a successful party in a legal malpractice claim to recover fees previously paid. *See Lockhart v. Cade*, 728 A.2d 65, 69–70 (D.C.1999)("A client who has advanced sums to an attorney to cover litigation costs and expenses is frequently allowed to recover those sums, as compensatory damages, in a subsequent malpractice action against the attorney.") [24]

According to *Mallen & Smith, supra,* § 21.6:

Of course, unearned fees or costs, which were advanced, can be recovered. The legal fees and expenses paid by the client, however, may be the only damages sustained, the

---

**23.** In his brief, appellant argues that "[i]t became abundantly clear that Wildman was not satisfied with the advice of Abramson, but rather than quantify any economic damages, the court allowed him to express his wrath in form of a malpractice action influencing and confusing the jury to Abramson's prejudice."

**24.** In *Lockhart*, the District of Columbia Court of Appeals observed, 728 A.2d at 70:

In the present case, Ms. Cade accepted a retainer with the understanding that she would provide certain services to Mr. Lockhart, but she failed to do so; as a result, Mr. Lockhart paid for services that he did not receive. It is self-evident that Ms. Cade should not benefit financially from her own negligence.

recovery of which may be the sole or one of the objectives of the legal malpractice suit.

Similarly, 7 Am.Jur.2d *Attorneys at Law* § 262 (2007) notes:

As a matter of policy, a lawyer should be regarded as "earning" his or her fee only when he or she provides legal services to his or her client in a manner consistent with his or her professional duties; consequently, a lawyer's improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge.

Under this theory, Wildman's damages were far from speculative. They were the amount of fees that the jury found to be unearned because appellant acted inconsistently with professional duties as required under the contract. In our view, the damage award was proper.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**